98 Cal.Rptr.2d 302 (2000)
82 Cal.App.4th 294
CALIFORNIA CORRECTIONAL PEACE OFFICERS ASSOCIATION et al., Plaintiffs and Respondents,
v.
STATE OF CALIFORNIA et al., Defendants and Appellants.
No. A085064.
Court of Appeal, First District, Division Two.
July 18, 2000.
*304 Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Paul D. Gifford, Assistant Attorney General, Allen R. Crown, Supervising Deputy Attorney General, Morris Lenk, Supervising Deputy Attorney General, Attorneys for Appellants.
Carroll, Burdick & McDonough, Ronald Yank, Rosemary Springer, Philip A. Ginsburg, San Francisco, California Correctional Peace Officers' Association, Benjamin C. Sybesma, West Sacramento, Christopher D. Howard, Fresno, Attorneys for Respondents.
Silver, Hadden & Silver, Stephen H. Silver, William J. Hadden, Santa Monica, for Peace Officers' Research Association of California Legal Defense Fund as amicus curiae on behalf of Respondents.
Green & Shinee, Richard A. Shinee, Helen L. Schwab, Encino, for Association for Los Angeles Deputy Sheriffs, as amicus curiae on behalf of Respondents.
*303 KLINE, P.J.
This is an appeal from an injunction constraining the manner in which the state may conduct an investigation of alleged criminal misconduct by state prison guards at a penal institution. The superior court issued a preliminary injunction against the California Department of Justice (DOJ) and the California Department of Corrections (CDC), limiting their conduct in investigating alleged criminal activity by correctional officers at Corcoran state prison. The sole issue before us is the propriety of the limits placed on the investigation by the preliminary injunction. This appeal does not involve any criminal or administrative charges brought against individual correctional officers. Nor does it involve any efforts by individual officers to suppress incriminating statements made by them.
The injunction relates to an investigation of alleged criminal activity by correctional officers at Corcoran state prison. The investigation was precipitated by claims that the rape of an inmate had been "set up" by prison staff, who then endeavored to conceal their conduct. The correctional officers refused to cooperate with the investigative efforts of the local district attorney. The district attorney appeared before a joint hearing on Corcoran State Prison by the California Legislature on July 28,1998, and described his fruitless attempt to investigate claims of wrongdoing by correctional officers: "These are sworn officers. They don't have a right to not tell us *305 what's going on if they're just witnesses and they're not defendants. Notwithstanding that, these sworn officers refuse to cooperate with the district attorney's office and tell us what has occurred in the prison." Understandably, the CDC responded to this situation by calling for the assistance of the DOJ to investigate the allegations.
Plaintiffs are individual correctional officers interviewed by DOJ investigators at Corcoran state prison and their union, the California Correctional Peace Officers Association (CCPOA). Plaintiffs filed a lawsuit alleging abusive tactics in investigating the alleged criminal activity, and obtained a preliminary injunction, which was subsequently modified, setting forth procedures to be followed in conducting criminal and/or administrative investigations. Defendants DOJ and CDC appeal from the order granting the modified preliminary injunction. Plaintiffs appeal from the partial denial of their motion to broaden the injunction. Defendants claim no injunctive relief should have been granted and plaintiffs claim the relief that was granted was not broad enough.
The preliminary injunction was issued to protect plaintiffs against asserted violations of the Fifth Amendment and the Public Safety Officers Procedural Bill of Rights Act (the Act) as set forth in sections 3300-3311 of the Government Code.[1] As explained hereafter, we conclude that the investigation violated provisions of the Act and that injunctive relief is therefore appropriate under section 3309.5 to the extent it applies to the CDC but not insofar as it applies to the DOJ.

I. FACTUAL AND PROCEDURAL BACKGROUND
The first amended complaint alleged the following: The corrections staff at Corcoran state prison had been subjected to intensive investigation and legislative inquiry for a number of months concerning allegations that some officers had conspired to abuse inmates and to cover up their misconduct. On the morning of August 20, 1998, the warden convened a meeting in his office to inform CCPOA officers that the DOJ would be conducting an extensive criminal investigation. Correctional officers who were to be interviewed would not be allowed legal representation during questioning or the opportunity to consult with counsel beforehand. The warden advised CCPOA that its members would be ordered to cooperate in the DOJ criminal investigation pursuant to section 3304, subdivision (a), which provides in pertinent part: "Nothing in this section shall preclude a head of an agency from ordering a public safety officer to cooperate with other agencies involved in criminal investigations. If an officer fails to comply with such an order, the agency may officially charge him or her with insubordination." The warden explained that if DOJ investigators indicated that an officer was a "witness" and the officer thereafter refused to answer questions, he or she would be disciplined immediately with administrative time off and walked off the institution grounds. If, on the other hand, an officer were deemed a "target" and thereafter refused to be interviewed, he or she would be handcuffed and arrested.
More than 20 correctional officers were interviewed on August 20, 1998. All were told they were not free to leave the prison grounds until they met with investigators. When they reported to the warden's office, the officers were met by CDC special service agents and isolated until the commencement of individual interrogations. Officers were not informed whether they were "witnesses" or "targets" until interviews were underway, nor were they provided any advance notice of the subject matter of the investigation. They were not permitted to consult with a union lawyer or union representative prior to being interviewed. The officers were threatened with disciplinary sanctions if they did not *306 answer investigators' questions and otherwise cooperate. Correctional officers who wished to tape-record their interviews were told their cassette tapes would be seized as criminal evidence at the end of the interviews.
Declarations by correctional officers and CCPOA attorneys supported the allegations in the complaint and added the following details: The actual interviews were conducted by DOJ employees. Officers were not told whether they were "witnesses" or "targets" until interviews were underway, if at all. Miranda[2] warnings generally were not given. Officers who were told they were possible "targets" were not allowed to consult counsel. One officer identified as a possible "target" was given Miranda warnings at the end of the interview. Another was told he had no Fifth Amendment right to remain silent because it was not a court proceeding. CCPOA attorneys were denied admission to the prison grounds even though they routinely provide counsel for members who are interviewed regarding criminal conduct.
The complaint, which was filed in the San Francisco Superior Court on August 24, 1998, and amended on September 9, 1998, alleged four causes of action: (1) Violation of title 42 United States Code section 1983 by denying plaintiffs' Fifth and Sixth Amendment rights to remain silent and to counsel as secured through the Fourteenth Amendment; (2) violation of the Public Safety Officers' Procedural Bill of Rights set forth in Government Code section 3300 et seq.; (3) violation of the Memorandum of Understanding between CDC and plaintiffs' bargaining unit and the "Weingarten Settlement Agreement"; and (4) violation of the right to counsel under article I, section 15 of the California Constitution.
The court issued a temporary restraining order on September 3, 1998, and a preliminary injunction on September 23, 1998. The court modified the injunction on November 10,1998, after motions by all parties. The modified order requires that before any interrogation, as defined, of any correctional officers in State Bargaining Unit 6 about "possible criminal and/or administrative conduct," the officers must be provided at least 24 hours' written notice. The notification must inform the officers of the date, time, and place of the questioning, and whether the officers are "targets" of the investigation or mere "witnesses" to any such investigation. Defendants are enjoined from interrogating any correctional officer regarding possible criminal conduct, whether he or she is a "target" or a "witness," without first affording the officer the right to consult with counsel before being questioned. The order does not, however, provide officers the right to consult with counsel during questioning, nor does it give them the right to invoke the Fifth Amendment without fear of reprisal from their employer. The order restrains defendants from directly or indirectly using any statement made by any employee who, as of the date of the order (Nov. 10, 1998), had been denied legal counsel.
Both parties appealed from the order granting the modified preliminary injunction. Defendants also filed a petition for writ of supersedeas to stay the preliminary injunction pending appeal, which we granted by order dated February 11, 1999. (California Correctional Peace Officers Association, et al. v. State of California, et al, A084833.)

II. ARGUMENT

A. Standard of Review.
The decision to grant a preliminary injunction rests in the sound discretion of the trial court and will not be reversed unless the court has exceeded all bounds of reason or contravened the uncontradicted evidence. (Triple A Machine Shop, Inc. v. State of California (1989) 213 Cal.App.3d 131, 138, 261 Cal.Rptr. 493; IT *307 Corp. v. County of Imperial (1983) 35 Cal.3d 63, 69, 196 Cal.Rptr. 715, 672 P.2d 121.) If the evidence conflicts, we must construe it in the light most favorable to the trial court's decision. But if no issue of fact is presented, we determine whether the granting of the preliminary injunction was error as a matter of law. The party challenging the injunction bears the burden of showing a clear abuse of discretion or error of law. (Pro-Family Advocates v. Gomez (1996) 46 Cal.App.4th 1674, 1680, 54 Cal.Rptr.2d 600; IT Corp. v. County of Imperial, supra, 35 Cal.3d at p. 69, 196 Cal.Rptr. 715, 672 P.2d 121.)
"Trial courts evaluate two interrelated factors when deciding whether to issue a preliminary injunction. The first is the likelihood that the plaintiff will prevail on the merits at trial; the second, the interim harm that the plaintiff will likely sustain if the injunction were denied as compared to the harm that the defendant will likely suffer if the injunction were issued. By balancing the respective equities, the trial court should conclude whetherpending trial on the meritsthe defendant should or should not be restrained from exercising his or her claimed right." (Pro-Family Advocates v. Gomez, supra, 46 Cal.App.4th at pp. 1680-1681, 54 Cal.Rptr.2d 600.) Thus, on appeal from an order granting a preliminary injunction, the question generally is whether both irreparable harm and the likelihood of prevailing on the merits are established. (Id. at p. 1681, 54 Cal.Rptr.2d 600.)

B. Mootness.
After briefing was completed, plaintiffs informed us that a judgment had been entered confirming an arbitrator's award concerning the same conduct at issue in this case. The challenge in the arbitration proceeding was based on alleged violations of the Memorandum of Understanding (MOU) between the State of California and CCPOA covering State Bargaining Unit 6 Corrections. The arbitrator rejected the state's claim that the CDC bore no responsibility for the investigation because it was conducted by DOJ employees, noting that the investigation began at the CDC's behest, was conducted on CDC premises, and was provided assistance by CDC employees in organizing the interviews. The arbitrator found that the CDC had violated MOU sections 9.09(A) and (B), 2.02(A), 2.08(A), and 5.03(A) and (B).
Section 9.09(A) provides for notice when an employee becomes the subject of an investigation, which is likely to result in formal adverse action. The notice must be given at least 24 hours in advance, identify the subject matter, and declare the right to representation prior to any interrogation. Section 9.09(B) provides that an employee who has become the subject of such an investigation must be allowed a reasonable opportunity to secure a representative of his or her choice. Section 2.02(A) provides that CCPOA representatives must be given reasonable access to employees in the work area, and section 2.08(A) states that they shall be permitted reasonable access to state telephones. Finally, section 5.03 provides that the state shall not interfere with, restrain or coerce employees because of their exercise of rights guaranteed by the Ralph C. Dills Act. (§ 3512 et seq.)
The arbitrator's award ordered the CDC to "cease and desist from depriving employees of requested MOU representational rights at interviews whenever adverse action might result to the employment relationship. In addition the State Employer shall provide MOU rights and protections to employee witnesses (target or otherwise) under Sections 2.02, 2.08, 5.03 (including the Dills Act) and 9.09 during any investigation it conducts (criminal, administrative or other) and/or during any investigation conducted by another agency or entity at a CDC facility if the CDC participates above a de minimus [sic] level."
Plaintiffs argue that the arbitration judgment does not render the present appeal moot because the underlying basis for the arbitrator's award, the MOU, expired *308 on June 30, 1999, and it is not clear whether the new MOU will contain the same provisions. They also maintain that questions of damages and attorney fees remain. Most persuasive, however, is their argument that there is an important public interest in determining the constitutional and statutory questions raised in this appeal. There is ample precedent for resolving important issues of substantial and continuing public interest that may otherwise evade review. (See e.g., Abbott Ford, Inc. v. Superior Court (1987) 43 Cal.3d 858, 868, fn. 8, 239 Cal.Rptr. 626, 741 P.2d 124; Diamond v. Bland (1970) 3 Cal.3d 653, 657, 91 Cal.Rptr. 501, 477 P.2d 733; Montalvo v. Madera Unified Sch. Dist. Bd. of Education (1971) 21 Cal. App.3d 323, 329, 98 Cal.Rptr. 593.) We agree that the issues should be decided and proceed to do so.

C. Defendants' Contentions.

1. Public Safety Officers Procedural Bill of Rights Act.

Defendants contend that there has been no violation of the Act because that Act applies only to administrative investigations, not the type of criminal investigation conducted in this case.
The Act was first enacted in 1976. (Cal.Stats., ch. 465, p. 1202, § 1.) It includes a legislative declaration "that effective law enforcement depends upon the maintenance of stable employer-employee relations, between public safety employees and their employers" and that the purpose of the statute is "to assure that stable relations are continued throughout the state and to further assure that effective services are provided to all people of the state...." (§ 3301.) The Act is thus primarily a labor relations statute. It provides a catalog of basic rights and protections that must be afforded all peace officers by the public entities which employ them.[3] (Runyan v. Ellis (1995) 40 Cal.App.4th 961, 964, 47 Cal.Rptr.2d 356; Binkley v. City of Long Beach (1993) 16 Cal.App.4th 1795, 1805, 20 Cal.Rptr.2d 903.)
Section 3303, which is most relevant and is set forth in its entirety in the margin below,[4] describes in considerable detail the *309 conditions that must be followed "[w]hen any public safety officer is under investigation and subjected to interrogation by his or her commanding officer, or any other member of the employing public safety department, that could lead to punitive action...." (§ 3303.) In essence, the statute requires that, prior to interrogation, an officer must be informed of the identity of the interrogators and the nature of the investigation. The interrogation must be conducted at a reasonable hour, for a reasonable period of time, may not include offensive language, and may be tape-recorded by the officer. The right to representation arises when the interrogation focuses on matters likely to result in punitive action.
The Act was not designed to provide public safety officers any greater right than other persons in connection with investigations by law enforcement agencies in which they are not employed. By its own terms, the protections of section 3303 apply only to investigations "by [the public *310 officer's] commanding officer, or any other member of the employing public safety department, that could lead to punitive action...." As used in the statute, "punitive action means any action that may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment." (Ibid.) This language was held in People v. Velez (1983) 144 Cal.App.3d 558, 192 Cal.Rptr. 686 to render section 3303 inapplicable to interrogations of public safety officers by representatives of a law enforcement agency that does not employ the interrogated officer.
Plaintiff officers argue section 3303 should be applied in this case notwithstanding the fact that the DOJ, which conducted the interrogations, was not their employer, because "the State created a scheme in which both CDC and DOJ were inextricably intertwined, each acting as agents of the other." Urging us to pierce the veil sought to be created by involvement of the DOJ, they emphasize that it was the CDC, which was their employer, that told them they had no right to counsel and that they would be arrested or disciplined if they asserted their rights during interrogation, and that it was scathe CDC, not the DOJ, that prevented them from leaving prison grounds until they had given statements.[5]
We agree that, in this situation, the DOJ's involvement does not serve to immunize the CDC from the provisions of section 3303. CDC and DOJ must be considered to have been acting together in this investigation. The CDC did not merely order the correctional officers to cooperate with the DOJ investigation, but delivered interviewees to DOJ investigators, and threatened them with arrest and/or discipline if they asserted their rights during interrogation by DOJ agents. Until they had given statements, correctional officers were prevented from leaving prison grounds by their employer. Hallway exits and interrogation rooms were guarded by the CDC. The interviews took place during work hours or immediately thereafter, on work premises. Upon being told by DOJ interrogators that an officer was not providing satisfactory responses during the interrogation, CDC employees threatened the officers with criminal and disciplinary sanctions. Under these circumstances, the CDC and the DOJ must be considered to have been acting in concert.
Defendants nevertheless point to an additional provision of section 3303 which, they assert, by its own terms, makes the statute inapplicable to a criminal investigation. Subdivision (i) states that section 3303 shall not apply "to an investigation concerned solely and directly with alleged criminal activities." And section 3304 authorizes the employer to order "a public safety officer to cooperate with other agencies involved in criminal investigations" and further provides that "[i]f an officer fails to comply with such an order, the agency may officially charge him with insubordination." (§ 3304, subd. (a).)
No authority has been cited or found interpreting the exception in subdivision (i) for "an investigation concerned solely and directly with alleged criminal activities" or the corollary provision authorizing the employer to require cooperation with other agencies involved in criminal investigations. (§§ 3303, subd. (i), 3304, *311 subd. (a).) In construing statutes, the fundamental goal is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, we first look to the words of the statute, giving the language its usual, ordinary import. When the language is clear and unambiguous, there is no need for construction. But when the language is susceptible of more than one reasonable interpretation, we look to a variety of extrinsic aids, including the legislative history, the ostensible object to be achieved, public policy, and the statutory scheme of which the statute is a part. A statute should be construed whenever possible so as to preserve its constitutionality. (People v. Woodhead (1987) 43 Cal.3d 1002, 1007-1008, 239 Cal.Rptr. 656, 741 P.2d 154; Dyna-Med, Inc. v. Fair Employment & Housing Com. (1987) 43 Cal.3d 1379, 1386-1387, 241 Cal.Rptr. 67, 743 P.2d 1323.)
Defendants claim there is no need for statutory construction because the language is unambiguous, clear on its face, and applicable here. Plaintiffs disagree and proffer a more limited interpretation, which is also reasonable. They interpret the subdivision (i) exception as not applying to an administrative investigation (i.e., conducted by the employer) of criminal activities. This, they observe, is the type of investigation that occurred in Lybarger v. City of Los Angeles (1985) 40 Cal.3d 822, 221 Cal.Rptr. 529, 710 P.2d 329, where a police officer's termination for refusing to cooperate in a police department investigation of alleged criminal activities was reversed for failure to give the admonitions required by subdivision (h) of section 3303. Plaintiffs urge a narrow interpretation of subdivision (i)'s criminal activity exception that would make it applicable only when an investigation is conducted by a separate agency completely outside the confines of the employing agency, such as occurred in People v. Velez, supra, 144 Cal.App.3d 558, 192 Cal.Rptr. 686, where there was no involvement by the employer of the public safety officer who was interviewed by an outside agency. Plaintiffs urge a similar interpretation of the portion of section 3304 which authorizes the employer to (1) order its public safety officers to cooperate with other agencies involved in criminal investigations, and (2) to charge them with insubordination for failure to comply with such order. (§ 3304, subd. (a).) If these provisions are not limited to investigations conducted by outside agencies that are substantially independent of the employer, plaintiffs maintain, they would effectively defeat the entire purpose of the Act. Their argument is persuasive. Almost every administrative investigation of alleged misconduct could be recast as a criminal investigation to avoid the requirements of the Act. Thus, we agree that the criminal investigations referred to in subdivision (i) of section 3303 and subdivision (a) of section 3304 must be ones conducted primarily by outside agencies without significant active involvement or assistance by the employer.[6]
We conclude that the Act applied to the investigation at issue in this case and that a number of provisions were violated. The officers were not told who would interrogate them, nor were they given prior notice of the nature of the investigation. (§ 3303, subds. (a), (c).) Officers were prohibited from making their own tape recording of the interrogation. (§ 3303, subd. (g).) Officers were not allowed to consult with counsel before the interrogation, and those who were targets *312 were not allowed bring a representative to the interrogation. (§ 3303, subd. (i).) Finally, officers were not advised of their constitutional rights, as required by subdivision (h) of section 3303.
The California Supreme Court discussed the rights of peace officers under the Act and interpreted subdivision (h) of section 3303 in Lybarger v. City of Los Angeles, supra, 40 Cal.3d 822, 221 Cal.Rptr. 529, 710 P.2d 329. Officer Lybarger was found guilty of insubordination for failing to respond to questioning by his employer with regard to a criminal investigation. He appealed, claiming that he could not be disciplined for exercising his constitutional right to remain silent. The Supreme Court held that the officer had neither a constitutional nor a statutory right to remain silent free of administrative sanction. "As a matter of constitutional law, it is well established that a public employee has no absolute right to refuse to answer potentially incriminating questions posed by his employer. Instead, his self-incrimination rights are deemed adequately protected by precluding any use of his statements at a subsequent criminal proceeding."[7] (40 Cal.3d at p. 827, 221 Cal.Rptr. 529, 710 P.2d 329.) The statute also provides that an officer who refuses to respond to questions or submit to interrogation is subject to punitive action by his employer. (§ 3303, subd. (e).)
The Court nevertheless found that Officer Lybarger was entitled to relief because he was not fully advised of his constitutional rights under subdivision (h), formerly (g), of section 3303, which states: "If prior to or during the interrogation of a public safety officer it is deemed that he or she may be charged with a criminal offense, he or she shall be immediately informed of his or her constitutional rights." In determining when such advisement is required, the court ruled that "the investigating officers [are required] to inform the officer being questioned of his constitutional rights whenever he refuses to answer on self-incrimination grounds," as well as when the investigating officers believe him or her to be a suspect. (Lybarger v. City of Los Angeles, supra, 40 Cal.3d at p. 829, fn. 1, 221 Cal.Rptr. 529, 710 P.2d 329.) The advisements required under subdivision (h) include the Miranda rights (i.e., right to remain silent, right to presence and assistance of counsel, and admonition that any statement may be used against declarant in court) as modified by the Lefkowitz/Garrity rule that, although an officer has the right to remain silent, his silence could be deemed insubordination, but any statement made under compulsion of threat of discipline could not be used against him in a subsequent criminal proceeding. (Lefkountz v. Turley, supra, 414 U.S. 70, 77-79, 94 S.Ct. 316, 38 L.Ed.2d 274; Garrity v. State of N.J., supra, 385 U.S. 493, 500, 87 S.Ct. 616, 17 L.Ed.2d 562.) Thus, subdivision (h) requires advisement: (1) that the officer has the right to the presence and assistance of counsel; (2) although he has the right to remain silent and not incriminate himself, his silence may be deemed insubordination and lead to administrative discipline; (3) any statement made under compulsion of the threat of such discipline may not be used against him in any subsequent criminal proceeding. (Lybarger, supra, 40 Cal.3d at p. 829, 221 Cal.Rptr. 529, 710 P.2d 329.)
*313 The Court noted that its interpretation of the Act did not render subdivision (h) superfluous, "for that provision indeed confers additional protection on police officers, requiring that they be immediately advised of their constitutional rights in a noncustodial, administrative setting. Prior to the act, of course, no such advice or admonition was required by law." (Lybarger, supra, 40 Cal.3d at p. 828, 221 Cal. Rptr. 529, 710 P.2d 329; original italics.) Inasmuch as Officer Lybarger was not informed of his rights under subdivision (h), he was entitled to relief.
The declarations in the present case clearly indicate that subdivision (h) was violated on a number of occasions. Officers who invoked their right to remain silent should have been given admonishments. So too should the officers who were deemed "targets" of the investigation. Indeed, the record provides no indication that the admonishments required by subdivision (h) and Lybarger were given to anyone.

2. Separation of Powers.

Defendants also challenge the injunction on the ground it violates the separation of powers doctrine, because it adversely affects the ability of the DOJ, the preeminent statewide criminal justice agency, to investigate prison crime. This contention rests on Triple A Machine Shop, Inc. v. State of California, supra, 213 Cal.App.3d 131, 261 Cal.Rptr. 493.
Triple A Machine Shop involved a combined civil and criminal proceeding initiated by the Attorney General and the San Francisco District Attorney for alleged unlawful disposal of hazardous wastes. The superior court granted a preliminary injunction prohibiting the district attorney from contacting present and former employees of the machine shop on the ground that such contacts violated the attorneyclient privilege. The Court of Appeal reversed the judgment primarily on the basis of its findings that there was no violation of the attorney-client privilege or the work product privilege, but the court acknowledged the extent to which the doctrine of separation of powers influenced its decision. With respect to this issue, the court stated as follows: "The most significant effect of the injunction lies in its impact on the investigation and prosecution of the criminal charges. The separation of powers doctrine requires judicial restraint in enjoining criminal investigations or prosecutions. The prosecutor's authority stems from the executive branch of government (Cal. Const., art. III, § 3), and the investigation and gathering of evidence relating to criminal offenses is the prosecutor's responsibility and rests solely within his or her discretion. (Hicks v. Board of Supervisors (1977) 69 Cal.App.3d 228, 241, 138 Cal.Rptr. 101.) The discretionary authority vested in the district attorney to investigate and prosecute criminal conduct is considered too vital to the interest of public order to be subjected to prior restraint by the courts except under extraordinary circumstances. (Manchel v. County of Los Angeles (1966) 245 Cal.App.2d 501, 505, 54 Cal.Rptr. 53; Pitchess v. Superior Court (1969) 2 Cal.App.3d 644, 648, 83 Cal.Rptr. 35; Reporters Committee for Freedom of Press v. American Tel. & Tel. (D.C.Cir. 1978) 593 F.2d 1030, 1065.) `The balance between the Executive and Judicial branches would be profoundly upset if the Judiciary assumed superintendence over the law enforcement activities of the Executive branch upon nothing more than a vague fear or suspicion that its officers will be unfaithful to their oaths or unequal to their responsibility.' (Reporters Committee for Freedom of Press v. American Tel. & Tel., supra, at p. 1065.)" (Triple A. Machine Shop, Inc. v. State of California, supra, at pp. 144-145, 261 Cal.Rptr. 493.)
Federal decisions have recognized that injunctive relief against criminal investigations is available, but only under extraordinary circumstances where (1) the constitutional violations are egregious; (2) there is an imminent threat of such future misconduct; (3) the threatened harm is irreparable; *314 and (4) there is no adequate remedy at law. (See, e.g., Reporters Committee for Freedom of Press v. American Tel. & Tel., supra, 593 F.2d at p. 1065; Sullivan v. Murphy (1973) 156 App.D.C. 28, 478 F.2d 938, 965; Long v. District of Columbia (1972) 152 App.D.C. 187, 469 F.2d 927, 932; see also Note, The Federal Injunction as a Remedy for Unconstitutional Police Conduct (1968) 78 Yale L.J. 143.)
In the present case, the injunction applies to both the CDC and the DOJ. To the extent the injunction applies to the CDC, it is expressly authorized by the Legislature. Section 3309.5 of the Act provides: "In any case where the superior court finds that a public safety department has violated any of the provisions of this chapter, the court shall render appropriate injunctive or other extraordinary relief to remedy the violation and to prevent future violations of a like or similar nature, including, but not limited to, the granting of a temporary restraining order, preliminary, or permanent injunction prohibiting the public safety department from taking any punitive action against the public safety officer." (§ 3309.5, subd. (c).)
Section 3309.5 authorizes injunctive relief only as to the employing public safety department, which is the CDC. Nowhere does the statute authorize enjoining the investigative activities of outside law enforcement agencies such as the DOJ. Moreover, meaningful relief does not require inclusion of the DOJ in the injunction. Enjoining the CDC from violating the provisions of the Act is sufficient to provide effective relief, since it was the CDC's actions that rendered the Act applicable. Had the DOJ conducted a substantially independent investigation,[8] the provisions of section 3303 would have been inapplicable. To the extent the injunction includes the DOJ, it is unauthorized by section 3309.5 and fails to meet the showing of extraordinary circumstances necessary to overcome the separation of powers doctrine. Enjoining the DOJ is, as a practical matter, unnecessary because the injunction issued against the CDC will effectively prevent any such future concerted activity. Indeed, plaintiffs conceded as much during oral argument by stating they would be happy with an injunction issued against only the CDC.

3. Federal Civil Rights Cause of Action (42 U.S.C. § 1983).

Our conclusion that plaintiffs are entitled to injunctive relief under the Act renders it unnecessary to address defendants' claim that plaintiffs have failed to state a case under the federal civil rights act. Any rights plaintiffs can legitimately claim under the Fifth Amendment are granted under the Act.

D. Plaintiffs' Contentions

1. Failure to Enjoin Punitive Action for Invocation of Fifth Amendment Rights.

Plaintiffs claim the denial of their motion to modify the injunction was erroneous in that the court did not enjoin the CDC from taking punitive action against them for invoking their Fifth Amendment rights. As previously mentioned, peace officers may be disciplined for insubordination if they refuse to cooperate with a criminal investigation. The Fifth Amendment protects them against use of such statements in a criminal proceeding. (See Lybarger v. City of Los Angeles, supra, 40 Cal.3d at p. 827, 221 Cal.Rptr. *315 529, 710 P.2d 329.) If the CDC seeks to punish plaintiffs or other correctional officers for invoking their Fifth Amendment rights without having been offered immunity, such officers could assert their constitutional rights at the disciplinary proceedings the CDC would be obliged to commence. (See Lybarger v. City of Los Angeles, supra, 40 Cal.3d 822, 221 Cal. Rptr. 529, 710 P.2d 329.)
The injunction, however, should be modified to require the admonishments set forth in Lybarger and subdivision (h) of section 3303 whenever an officer asserts his or her right to remain silent or if it is otherwise deemed he or she may be charged with a criminal offense.

2. Presence of Counsel During Interrogations.

Plaintiffs also fault the court for failing to require that they be afforded the right to consult with counsel during the interrogations. They maintain that the right to counsel is granted under Miranda v. Arizona, supra, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 because they were subjected to custodial interrogations. Such a contention was impliedly rejected in Lybarger v. City of Los Angeles, supra, 40 Cal.3d 822, 828, 221 Cal.Rptr. 529, 710 P.2d 329, where the Supreme Court observed that the admonitions required under subdivision (h) of section 3303 confer additional protection on peace officers by "requiring that they be immediately advised of their constitutional rights in a noncustodial, administrative setting. Prior to the act, of course, no such advice or admonition was required by law." (Lybarger, supra, 40 Cal.3d at p. 828, 221 Cal.Rptr. 529, 710 P.2d 329, italics added.)
Our conclusion that plaintiffs have a right to counsel under the Act (§ 3303, subd. (h) renders it unnecessary to address their claim under Miranda.

III. DISPOSITION
The order granting the modified preliminary injunction is reversed with directions to modify it in accord with this opinion. The stay granted by writ of supersedeas is dissolved. Each party to bear its own costs on appeal.
LAMBDEN, J., and RUVOLO, J., concur.
NOTES
[1] Unless otherwise indicated, all statutory references are to the Government Code.
[2] Miranda v. Arizona (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.
[3] We use the term "peace officer" interchangeably with the term "public safety officer" that is used in the Act and intend no distinction between the two terms.
[4] Section 3303 reads in full:

"When any public safety officer is under investigation and subjected to interrogation by his or her commanding officer, or any other member of the employing public safety department, that could lead to punitive action, the interrogation shall be conducted under the following conditions. For the purpose of this chapter, punitive action means any action that may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment.
"(a) The interrogation shall be conducted at a reasonable hour, preferably at a time when the public safety officer is on duty, or during the normal waking hours for the public safety officer, unless the seriousness of the investigation requires otherwise. If the interrogation does occur during off-duty time of the public safety officer being interrogated, the public safety officer shall be compensated for any off-duty time in accordance with regular department procedures, and the public safety officer shall not be released from employment for any work missed.
"(b) The public safety officer under investigation shall be informed prior to the interrogation of the rank, name, and command of the officer in charge of the interrogation, the interrogating officers, and all other persons to be present during the interrogation. All questions directed to the public safety officer under interrogation shall be asked by and through no more than two interrogators at one time.
"(c) The public safety officer under investigation shall be informed of the nature of the investigation prior to any interrogation.
"(d) The interrogating session shall be for a reasonable period taking into consideration gravity and complexity of the issue being investigated. The person under interrogation shall be allowed to attend to his or her own personal physical necessities.
"(e) The public safety officer under interrogation shall not be subjected to offensive language or threatened with punitive action, except that an officer refusing to respond to questions or submit to interrogations shall be informed that failure to answer questions directly related to the investigation or interrosafety gation may result in punitive action. No promise of reward shall be made as an inducement to answering any question. The employer shall not cause the public safety officer under interrogation to be subjected to visits by the press or news media without his or her express consent nor shall his or her home address or photograph be given to the press or news media without his or her express consent.
"(f) No statement made during interrogation by a public safety officer under duress, coercion, or threat of punitive action shall be admissible in any subsequent civil proceeding. This subdivision is subject to the following qualifications:
"(1) This subdivision shall not limit the use of statements made by a public safety officer when the employing public safety department is seeking civil sanctions against any public safety officer, including disciplinary action brought under Section 19572.
"(2) This subdivision shall not prevent the admissibility of statements made by the public safety officer under interrogation in any civil action, including administrative actions, brought by that public safety officer, or that officer's exclusive representative, arising out of a disciplinary action.
"(3) This subdivision shall not prevent statements made by a public safety officer under interrogation from being used to impeach the testimony of that officer after an in camera review to determine whether the statements serve to impeach the testimony of the officer.
"(4) This subdivision shall not otherwise prevent the admissibility of statements made by a public safety officer under interrogation if that officer subsequently is deceased.
"(g) The complete interrogation of a public safety officer may be recorded. If a tape recording is made of the interrogation, the public safety officer shall have access to the tape if any further proceedings are contemplated or prior to any further interrogation at a subsequent time. The public safety officer shall be entitled to a transcribed copy of any notes made by a stenographer or to any reports or complaints made by investigators or other persons, except those which are deemed by the investigating agency to be confidential. No notes or reports that are deemed to be confidential may be entered in the officer's personnel file. The public safety officer being interrogated shall have the right to bring his or her own recording device and record any and all aspects of the interrogation.
"(h) If prior to or during the interrogation of a public safety officer it is deemed that he or she may be charged with a criminal offense, he or she shall be immediately informed of his or her constitutional rights,
"(i) Upon the filing of a formal written statement of charges, or whenever an interrogation focuses on matters that are likely to result in punitive action against any public safety officer, that officer, at his or her request, shall have the right to be represented by a representative of his or her choice who may be present at all times during the interrogation. The representative shall not be a person subject to the same investigation. The representative shall not be required to disclose, nor be subject to any punitive action for refusing to disclose, any information received from the officer under investigation for noncriminal matters.
"This section shall not apply to any interrogation of a public safety officer in the normal course of duty, counseling, instruction, or informal verbal admonishment by, or other routine or unplanned contact with, a supervisor or any other public safety officer, nor shall this section apply to an investigation concerned solely and directly with alleged criminal activities.
"(j) No public safety officer shall be loaned or temporarily reassigned to a location or duty assignment if a sworn member of his or her department would not normally be sent to that location or would not normally be given that duty assignment under similar circumstances."
[5] Plaintiffs request us to take judicial notice of a 1991 stipulated judgment from the Sacramento County Superior Court in a case brought by the CCPOA against the CDC involving the rights and duties of correctional officers under the Act during fact-finding inquiries conducted by coroners' representatives to determine the cause of deaths occurring in prison. Plaintiffs seek to use this case to argue that defendants are estopped from asserting that the Act does not apply to investigations by outside law enforcement agencies. Plaintiffs presented neither the stipulated judgment nor the estoppel argument to the trial court. Moreover, they have failed to present enough of the record for us to make a determination as to the applicability of collateral estoppel. Accordingly, we deny the request to take judicial notice.
[6] We do not construe our opinion as materially obstructing the ability of the employing agency to conduct a criminal investigation of its peace officer employees. It is true that a law enforcement agency investigating its own peace officer employees would have to provide the rights accorded by the Acti.e., notice of the nature of the investigation and the identity of the interrogators, the right to record the interrogation, admonishment of constitutional rights, and the right to representationbut we do not think that this requirement would materially impede meaningful investigation of employees regarding criminal misconduct.
[7] See also Williams v. City of Los Angeles (1988) 47 Cal.3d 195, 200, 252 Cal.Rptr. 817, 763 P.2d 480; Pasadena Police Officers Assn. v. City of Pasadena (1990) 51 Cal.3d 564, 578, 273 Cal.Rptr. 584, 797 P.2d 608. The decisions in these cases are based on the decisions of the United States Supreme Court in Lefkowitz v. Turley (1973) 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 and Garrity v. State of N.J. (1967) 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562, which held that public employees or contractors may be compelled to respond to questions about the performance of their duties only if their answers cannot be used against them in subsequent criminal prosecutions. (Accord, Gardner v. Broderick (1968) 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082; Lefkowitz v. Cunningham (1977) 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1.)
[8] It must be acknowledged that an independent investigation will usually require some cooperation by the employing agency. For example, as plaintiffs in this case conceded, a request that an outside agency investigate an employee, and an order to the employee to show up at that agency's offices to be interviewed under threat of insubordination charges for failure to comply does not subject the employer to the constraints of the Act. (§ 3304, subd. (a).) While we are unable to draw a bright line as to when cooperation with an independent investigation turns into active involvement, we can conclude that this investigation involved excessive assistance by the CDC.