Filed 5/24/16

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| DEPARTMENT OF CORRECTIONS AND REHABILITATION et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> STATE PERSONNEL BOARD, <br><br> Defendant; <br> SHIEKH IQBAL, <br> Real Party in Interest and Appellant. | C073865 <br><br> (Super. Ct. No. 34201080000748CUWMGDS) |

APPEAL from a judgment of the Superior Court of Sacramento County, Michael P. Kenny, Judge. Affirmed and remanded.

California Correctional Peace Officers Association, Daniel M. Lindsay, Janice R. Shaw, and Aaron G. Cohen for Real Party in Interest and Appellant.

Department of Corrections and Rehabilitation, Stephen A. Jennings and Christopher D. Howard for Plaintiffs and Respondents.

1

California Department of Corrections and Rehabilitation (CDCR) gave notice it intended to discipline its employee, parole agent Shiekh Iqbal (real party in interest), for unauthorized use of government resources to access criminal history information concerning a third party. The State Personnel Board (SPB) revoked the discipline on statute of limitations grounds under the Public Safety Officers Procedural Bill of Rights Act (POBRA), Government Code section 3304. (Unless otherwise set forth, statutory references that follow are to the Government Code.) SPB ruled that statutory tolling of the limitations period for "criminal investigation" of misconduct did not apply because CDCR conducted the criminal investigation itself, rather than have it done by an independent agency. (§ 3304.)

Section 3304, subdivision (d) provides "(1) . . . [N]o punitive action . . . shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct. . . . In the event that the public agency determines that discipline may be taken, it shall complete its investigation and notify the public safety officer of its proposed discipline by a Letter of Intent or Notice of Adverse Action articulating the discipline that year, except as provided in paragraph (2). The public agency shall not be required to impose the discipline within that one-year period.

"(2)(A) If the act, omission, or other allegation of misconduct is also the subject of a criminal investigation or criminal prosecution, the time during which the criminal investigation or criminal prosecution is pending shall toll the one-year time period. [¶] . . ."

CDCR and its (former) Secretary Matthew Cate petitioned for administrative mandamus. (Code Civ. Proc., § 1094.5.) The trial court granted the petition, ruling the discipline was timely because the limitations period was tolled during CDCR's internal

2

criminal investigation of the misconduct. Iqbal appeals, arguing we should defer to SPB's interpretation of the statute. SPB has elected not to file a brief in this appeal.

We conclude tolling applies, and the disciplinary action was timely. We affirm the judgment remanding the case for SPB decision on the merits.

FACTS AND PROCEEDINGS

Iqbal has been employed as a CDCR Parole Agent since 1987 and has been assigned to Alameda County since 1998. In the course of that assignment, he developed a close working relationship with the Union City Police Department (UCPD) and would often contact UCPD with work-related inquiries for criminal history information on subjects through the California Law Enforcement Telecommunications System (CLETS) or through the Alameda County Consolidated Records Information Management System.

On October 29, 2007, Iqbal contacted a UCPD dispatcher and asked her to check criminal history information regarding a third party. The third party is not a parolee but rather is a personal acquaintance of Iqbal. The dispatcher accessed CLETS and relayed the results to Iqbal.

On an undetermined date in early 2008, CDCR's Office of Internal Affairs (OIA) became aware of allegations that Iqbal had accessed CLETS for personal purposes unrelated to his job. OIA requested information from UCPD, which UCPD provided on April 10, 2008.

On October 6, 2008, OIA assigned Senior Special Agent Mark Hoff to conduct a criminal investigation of the matter.

On October 29, 2008, the Department of Justice (DOJ) requested information from UCPD regarding "Possible CLETS Misuse," stating DOJ had received a request to determine if the third party had been inquired upon through CLETS for other than official business.

3

On November 4, 2008, UCPD provided information about Iqbal's CLETS access in response to DOJ's request.

On December 11, 2008, Hoff attempted to conduct an interview with Iqbal. (AR 311) Pursuant to the Investigative Interview *Criminal* Subject Memorandum, Iqbal was told he was being interviewed for possible criminal conduct, and he was read his *Miranda* rights. (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694].) Iqbal chose to remain silent.

On December 15, 2008, Hoff completed the criminal investigation and submitted a report to the Alameda County District Attorney's Office (DA) for consideration of criminal charges.

On December 15 or 18, 2008, Hoff met with a Deputy DA, a CDCR attorney, and a representative from the Office of the Inspector General, Bureau of Independent Review. The Deputy DA said there were chargeable misdemeanor offenses (Pen. Code, §§ 11143, 13304 [unauthorized receipt of state or local criminal history information from state or local records]) but declined to prosecute because the one-year criminal statute of limitations had elapsed.

Thus, Hoff "closed" the criminal investigation and "opened" an administrative investigation to determine whether discipline was warranted.

On January 20, 2009, OIA gave Iqbal an Investigative Interview *Administrative* Subject Memorandum, directing him to report for an interview in the administrative inquiry.

On January 29, 2009, Iqbal appeared for the interview and was read the Advisement of Rights Administrative Inquiry form, advising him this was an administrative inquiry for which he did not have the right to refuse to answer questions, and if he did refuse, his refusal would be grounds for adverse personnel action. He was further advised that his answers to questions could not be used against him in any criminal proceedings. In the recorded interview, Iqbal admitted he had signed an

4

employee form setting forth the policy for accessing criminal justice information, but said he did not remember having read it. He admitted he violated the policy by having UCPD dispatch run an inquiry on the third party. But he claimed he did not think it was wrong at the time he did it.

Iqbal stated he asked for the information because the third party had recently been elected vice-president of the East Bay Islamic Society, of which Iqbal was president. Several years earlier, the third party had said something suggesting he had a criminal history. Iqbal claimed he was concerned about the organization's funds and that his employment as a parole agent might be jeopardized by association with a criminal.

CDCR determined discipline was warranted and served Iqbal with Notice of Adverse Action to reduce his salary by five percent for one year pursuant to Government Code section 19574 for failure of good behavior and other grounds, including violation of Penal Code sections 502 and 13304 (causing unauthorized access of computer network and unauthorized receipt of information obtained from a record), Government Code section 19990 (engaging in activity inconsistent with job duties), and the regulatory Code of Conduct and Code of Ethics. No proof of service appears in the record, but the Notice was signed on April 16, 2009, and stated the penalty would go into effect on April 30, 2009 (though SPB decision indicated the notice was effective on April 24, 2009 and therefore the notice was served no earlier than April 16 and no later than April 24, 2009).

Iqbal appealed to SPB and had a hearing before an administrative law judge (ALJ) on March 1, 2010. In adopting the ALJ's proposed decision in favor of Iqbal, SPB adopted the ALJ's application of a SPB precedential decision (*Andrew Ruiz* (2005) SPB Dec. No. 05-03) that the tolling provision for criminal investigations applies only when the investigation is one being conducted by an independent law enforcement agency other than the appointing power. To interpret the tolling provision otherwise would allow an appointing power to circumvent the one-year period by simply designating all

5

investigations as criminal investigations, and would defeat the purpose of the statute. (*Andrew Ruiz, supra*, at p. 5.)

SPB found as factual matters that (1) the one-year limitations period began to run no later than April 10, 2008, when OIA requested information about the incident from the UCPD, and (2) CDCR served the Notice of Adverse Action "on or after April 16, 2009, at least one year and six days" after the statute of limitations began to run. SPB, considering the evidence in the light most favorable to CDCR "for purposes of this discussion," concluded the one-year period was tolled for three days (December 15th to 18th, 2008) while the District Attorney's Office considered whether it would file criminal charges. SPB accordingly concluded CDCR missed the deadline by three days.

CDCR filed a petition for writ of administrative mandamus in the trial court. SPB made a formal appearance but did not submit a brief or argue the matter, which was submitted on papers and oral argument by the attorneys representing CDCR and Iqbal. The trial court ruled SPB's interpretation of the statute -- that the tolling provision should apply only to criminal investigations by an external agency -- was not supported by the plain language of the statute and was incorrect as a matter of law. The court entered judgment granting the writ petition and ordering a writ of mandate directing SPB to vacate its decision that the limitations period had expired, reinstate the Notice of Adverse Action, and conduct further proceedings on the merits of Iqbal's administrative appeal.

Iqbal appeals from the trial court's judgment.

DISCUSSION

I

*Standard of Review*

In reviewing a SPB decision on a petition for administrative mandamus, we stand in the same shoes as the trial court, applying the substantial evidence rule. (*California Dept. of Corrections v. State Personnel Bd. (Henning)* (2004) 121 Cal.App.4th 1601,

6

1611 (*CDC-Henning*).)  We do not reweigh the evidence but instead indulge all presumptions and resolve all conflicts in favor of the decision of SPB, which is an agency of constitutional authority acting as an adjudicatory body to determine facts.  (*Ibid*.; *Telish v. State Personnel Bd.* (2015) 234 Cal.App.4th 1479, 1483, fn. 3 (*Telish*).)  Insofar as the appeal presents questions of law, our review is de novo.  (*CDC-Henning, supra*, at p. 1611.)  The sole issue in this appeal is statutory interpretation of section 3304, which presents a question of law subject to de novo review on appeal.  (*Department of Corrections and Rehab. v. State Personnel Bd. (Moya)* (2013) 215 Cal.App.4th 1101, 1106 (*CDCR-Moya*).)

II

*CDCR's Criminal Investigation Tolled the Limitations Period*

Iqbal asks us to defer to SPB's interpretation of the statute as stated in its precedential case, *Andrew Ruiz, supra*, SPB Dec. No. 05-03, that tolling applies only to criminal investigations conducted by outside agencies.  However, SPB precedential decisions are not binding on this court.  (*CDC-Henning, supra*, 121 Cal.App.4th at p. 1618.)  "We respect but do not necessarily defer to SPB's interpretations of the governing statutes. [Citation.] . . .  The judiciary takes ultimate responsibility for the construction of statutes, although according great weight and respect to the administrative construction such as is appropriate under the circumstances. [Citation.]"  (*Id*. at p. 1611.)  "While we must generally consider and respect the Board's interpretation of a statute within its administrative jurisdiction, we are not bound by the Board's interpretation nor are we required to accord any deference to a clearly erroneous interpretation of an unambiguous statute. [Citations.]  The Board has no greater power than we do to graft a nonexistent requirement into a statute."  (*CDCR-Moya, supra*, 215 Cal.App.4th at p. 1108.)

7

In construing statutes, we begin by examining the statutory language, giving it its usual and ordinary meaning and, if there is no ambiguity, we presume the lawmakers meant what they said, and the plain meaning governs. (*Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 321.) If the language is ambiguous, we may resort to extrinsic sources and determine the construction that most closely comports with the lawmakers' apparent intent, with a view to promoting the general purpose of the statute. (*Ibid*.)

As indicated, section 3304, subdivision (d), provides:

"(1) Except as provided in this subdivision . . . no punitive action . . . shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery . . . of the allegation . . . . In the event that the public agency determines that discipline may be taken, it shall complete its investigation and notify the public safety officer of its proposed discipline by a Letter of Intent or Notice of Adverse Action articulating the discipline that year, except as provided in paragraph (2). The public agency shall not be required to impose the discipline within that one-year period.

"(2)(A) If the act, omission, or other allegation of misconduct is also the subject of a criminal investigation or criminal prosecution, the time during which the criminal investigation or criminal prosecution is pending shall toll the one-year time period. . . ."

The plain language of section 3304 imposes no restriction on who conducts the criminal investigation. POBRA itself deals only with law enforcement employers, which are presumably capable of conducting criminal investigations. While no ambiguity appears, we must address the authority relied upon by Iqbal in his quest to inject the word "external" into the criminal investigation language of the statute.

POBRA -- the stated purpose of which is to secure stable employer-employee relations -- sets forth a list of basic rights and protections which must be afforded all peace officers being investigated for misconduct by the public entities that employ them. (§ 3301 [declaration of legislative intent]; *Mays, supra*, 43 Cal.4th at p. 320.) Section

8

3303 sets conditions on the conduct of interrogations when officers are under investigation (as opposed to routine counseling), e.g., the time, location, and duration of interrogations, right to have a representative present, etc. Section 3303 does not apply to "an investigation concerned *solely* and directly with alleged criminal activities." (§ 3303, subd. (i), italics added.)

"If prior to or during the interrogation of a public safety officer it is deemed that he or she may be charged with a criminal offense, he or she shall be immediately informed of his or her constitutional rights," including the right to remain silent. (§ 3303, subd. (h); *Lybarger v. City of Los Angeles* (1985) 40 Cal.3d 822, 827-829.) In an administrative investigation, the officer has no right to remain silent, though any self-incriminating statement cannot be used at a criminal proceeding, while refusal to answer subjects the officer to disciplinary action for insubordination. (*Lybarger, supra*, at p. 827.)

Section 3304 functions as a limitations period on investigations. (*Mays, supra*, 43 Cal.4th at p. 323 [limitations period is satisfied when employer gives notice that it might take disciplinary action for specified misconduct, without specifying discipline].) In enacting section 3304, subdivision (d), "the Legislature was focused upon preventing a perceived lack of fairness caused by a drawn-out investigatory process -- and not with requiring that officers receive notice of specific intended discipline at that early stage of the process." (*Mays, supra*, 43 Cal.4th at p. 324; italics omitted.)

In the case relied upon by Iqbal, *Andrew Ruiz, supra*, SPB Dec. No. 05-03, a CDCR Chief Deputy Warden formally requested an Internal Affairs (Office of Investigative Services or OIS) investigation into allegations that a correctional officer fraudulently signed overtime sheets for work he did not perform. OIS reported to CDCR when the criminal investigation was complete and referred the results to the District Attorney for possible criminal prosecution. The District Attorney later determined the information was insufficient and asked OIS to conduct a supplemental investigation,

9

which it did.  The District Attorney's Office concluded that, even with the supplemental information, there was insufficient evidence to file criminal charges.  The issue before SPB was "Whether the one-year limitations period under Government Code section 3304(d) was tolled during the time that the Department [CDCR] conducted a criminal investigation concerning the alleged misconduct, and/or when [CDCR] referred its investigative findings to the District Attorney's Office for review and possible criminal prosecution[.]"  (*Id.* SPB Dec. No. 05-03 at p. 2.)  Ruiz argued tolling was inapplicable because the criminal investigation was conducted by CDCR, and not by an outside, independent entity.  (*Id*. at p. 3.)  SPB (*ibid*.) found no case law on point but took guidance from *Cal. Corr. Peace Officers Ass'n. v. Cal.* (2000) 82 Cal.App.4th 294 (*CCPOA*).

In *CCPOA*, the Department of Corrections (CDC) and the DOJ together investigated alleged criminal misconduct by state prison guards.  (*Id*., *supra*, 82 Cal.App.4th at p. 299.)  The guards sought and obtained a preliminary injunction against both entities, constraining the manner in which the guards could be interrogated to conform to protections afforded peace officers under section 3303 of POBRA.  (*Id*. at pp. 305-306.)  The entities argued the statute was inapplicable because it applied only to investigations by a peace officer's employer, and the interrogations were being conducted by DOJ.  (*Ibid*.)  The appellate court held the statutory protections applied because CDC and DOJ "must be considered" to be acting together.  (*Id*. at p. 307.)  CDC did not merely order the guards to cooperate with DOJ, but delivered them to DOJ interrogators, threatened them with arrest or discipline if they asserted rights during the interrogations, and prevented them from leaving the prison grounds until they had given statements. (*Ibid*.)

In *CCPOA*, the two entities argued as an alternative that section 3303 was inapplicable because subdivision (i) states the statute does not apply to "an investigation concerned solely and directly with alleged criminal activities," and section 3304 allows

10

an employer to order peace officers to cooperate with other agencies involved in criminal investigations, under threat of penalty for insubordination. (*CCPOA, supra*, 82 Cal.App.4th at p. 307.) The appellate court agreed with the peace officers' argument that "If these provisions are not limited to investigations conducted by outside agencies that are substantially independent of the employer . . . they would effectively defeat the entire purpose of [POBRA]. . . . Almost every administrative investigation of alleged misconduct could be recast as a criminal investigation to avoid the requirements of [POBRA]. Thus, we agree that the criminal investigations referred to in subdivision (i) of section 3303 and subdivision (a) of section 3304 must be ones conducted primarily by outside agencies without significant active involvement or assistance by the employer. [Fn. omitted.]" (*CCPOA, supra*, 82 Cal.App.4th at pp. 308-309.) In a footnote, the court said, "We do not construe our opinion as materially obstructing the ability of the employing agency to conduct a criminal investigation of its peace officer employees. It is true that a law enforcement agency investigating its own peace officer employees would have to provide the rights accorded by the Act -- i.e., notice of the nature of the investigation and the identity of the interrogators, the right to record the interrogation, admonishment of constitutional rights, and the right to representation -- but we do not think that this requirement would materially impede meaningful investigation of employees regarding criminal misconduct." (*Id*. at p. 309, fn. 6.)

Applying *CCPOA*, SPB decided in *Andrew Ruiz, supra*, SPB Dec. No. 05-03, that the criminal investigation tolling of the limitations period (§ 3304, subd. (d)) applies only where the criminal investigation is conducted by an outside, independent investigative entity, because otherwise any agency employing peace officers could avoid the one-year limitations period by simply designating any investigation it conducts as a criminal investigation. (*Andrew Ruiz, supra*, at p. 5.) SPB decided there was some tolling while the District Attorney's Office considered whether to file criminal charges, but there was no tolling for the period when CDCR conducted a supplemental criminal investigation at

11

the express request of the District Attorney's Office, because the supplemental investigation was conducted by the employing agency rather than an independent entity. (*Andrew Ruiz, supra*, SPB Dec. No. 05-03 at p. 6.) SPB concluded the disciplinary action was untimely. (*Id*. at p. 7.)

The *Andrew Ruiz* decision misapplied *CCPOA*. The *CCPOA* court's concern about employers avoiding PROBRA's protections, thus defeating the purpose of POBRA by recasting investigations as criminal investigations arose because POBRA's protective conditions on interrogations simply do not apply at all to investigations that are "solely" criminal. (§ 3303, subd. (i).) In contrast, *tolling* applies where the officer's alleged misconduct is "also" the subject of a criminal investigation. (§ 3304, subd. (d)(2)(A).) Here, although CDCR did assert that it first conducted a "criminal" investigation and closed that investigation before opening an "administrative" investigation, CDCR is not claiming exemption from POBRA, and Iqbal makes no claim of any violation of section 3303.

SPB's *Andrew Ruiz* decision and its cited authority, *CCPOA, supra*, 82 Cal.App.4th 294, have been criticized.

*Van Winkle v. County of Ventura* (2007) 158 Cal.App.4th 492, held that POBRA's protections for law enforcement officers who are the subjects of administrative investigations "do not apply to officers subject to criminal investigations conducted by their employers." (*Id*. at p. 494.) *Van Winkle* first found the evidence did not support the employee's claim of a "sham" criminal investigation. (*Id*. at p. 498.) As concerns us here, *Van Winkle* stated that *CCPOA* in dictum "concluded that section 3303, subdivision (i), covers only nonemployer law enforcement agencies. But there is no language in the Act which supports this interpretation. POBRA only applies to law enforcement employers. (§ 3303, subd. (i).) There would be no need for the Legislature to have added this provision to regulate the conduct of agencies that are not covered by the Act. . . . [¶] If lawmakers had believed that law enforcement employers could not conduct

12

independent criminal investigations, or would fraudulently initiate them to undermine POBRA, they would have excluded them from section 3303, subdivision (i), or they would have applied POBRA to all employer investigations without exception. But they did not do so for a good reason. They did not intend POBRA to limit or interfere with legitimate criminal investigations, or to impede an 'agency's efforts to police itself.' [Citation.]" (*Van Winkle, supra*, 158 Cal.App.4th at pp. 499-500.)

*Van Winkle* continued: "The court in *CCPOA* misinterpreted section 3303, subdivision (i), and narrowed its scope. The statutory language regarding criminal investigations does not limit the law enforcement agencies that may conduct those investigations. Yet, the court assumed that it needed to alter section 3303, subdivision (i), because it believed law enforcement employers will routinely violate POBRA. But the court had no evidence to support its speculation that they would be scofflaws. Nor did it have the authority to alter the legislative definition of the exempt investigations without legislative guidance. [Citation.]

"The Legislature knew there could be abuses by law enforcement employers who were conducting criminal and internal affairs investigations of their employees. That is why it qualified the criminal investigation exemption provision with the language that the investigation had to be 'concerned solely and directly with alleged criminal activities.' (§ 3303, subd. (i).) The County notes that the legislative history reflects that there was no need to regulate purely criminal investigations. Officers have *Miranda* protections. POBRA is designed to reform disciplinary investigations where officers are ordered by their superiors or internal affairs departments to answer questions without those protections. (§ 3303, subd. (h).)

"In *CCPOA*, the court apparently assumed that trial courts could not distinguish between the types of investigations law enforcement employers conduct. But POBRA allows officers to bring actions so that trial courts can make that determination. [Citation.] Courts do in fact decide whether employer investigations fall within POBRA

13

as disciplinary interrogations or are exempt as routine inquiries. [Citation.] They are able to determine whether routine questions 'begin to shade into an investigation' covered by POBRA. [Citation.] They also decide whether investigations are partly criminal, and within POBRA, or solely criminal and exempt. [Citation.]" (*Van Winkle, supra*, 158 Cal.App.4th at pp. 499-500.)

*Van Winkle* accordingly declined to follow *CCPOA*. (*Ibid*.)

Iqbal argues *Van Winkle* is distinguishable because there the sheriff's department had divided the duties: Its internal affairs unit conducted only administrative investigations, and its "major crimes bureau" handled all criminal investigations. (*Id.* 158 Cal.App.4th at p. 495.) Iqbal incorrectly claims this point was critical to *Van Winkle*'s rejection of *CCPOA*. Not so. *Van Winkle* discussed this point in concluding the evidence did not support the employee's claim of a "sham" criminal investigation. (*Id.* at p. 498.) *Van Winkle* then turned to the employee's contention that, even if the criminal investigation was independent of the administrative investigation, POBRA applied because the criminal investigation was conducted by agents of the employer -- the contention for which the employee relied upon *CCPOA*. (*Ibid*.)

Here, Iqbal tries to turn a factual issue into a legal one, by arguing that CDCR's use of the same investigator to conduct first the criminal investigation and then the administrative investigation, the latter of which used the information acquired during the former, proves *CCPOA* was right about employers using criminal investigations as a subterfuge to avoid the statute of limitations for disciplinary action. This is really a factual allegation of a sham investigation unsupported by evidence. To the contrary, the speculation that an employer might conduct a criminal investigation for the sole purpose of delay has no traction in this case, where the Notice of Adverse Action was served a mere three days past the one-year limitations period (taking into consideration the three-day tolling found by SPB for the three days that the District Attorney's Office considered whether to file criminal charges).

*CCPOA* and SPB's *Andrew Ruiz* decision were criticized in *CDCR-Moya, supra*, 215 Cal.App.4th 1101, which held that an internal investigation of workers' compensation fraud tolled POBRA's statute of limitations. Section 3304, subdivision (d)(2)(H), tolls the limitations period "[i]f the investigation involves an allegation of workers' compensation fraud on the part of the public safety officer." The employee in *CDCR-Moya* relied on *CCPOA* and *Andrew Ruiz* to argue that tolling applies only if the workers' compensation fraud investigation is conducted by an independent, outside agency. *CDCR-Moya, supra*, 215 Cal.App.4th at pages 1107-1109, rejected the argument and instead agreed with *Van Winkle*'s analysis. *CDCR-Moya* found the statute unambiguous but nevertheless considered the legislative history of amendments adding tolling provisions. (*Id*. 215 Cal.App.4th at pp. 1110-1111.) It shows: " ' "Current law for state peace officers requires completion and prosecution of state peace officers within three years. Current law for local peace officers has no time limit. This bill requires peace officers' disciplinary investigations to be completed within one year. The bill excepts certain multi-jurisdiction and other investigation *for which management has no reasonable control*. [Italics added.] [¶] All representative law enforcement groups have carefully negotiated this bill and agree on the need and reasonableness of this bill; in essence, it is unfair to our peace officer[s] not to investigate and bring charges or dismiss the action within a reasonable time. One year is the agree[d]-upon time by both labor and management." ' (Assem. [Off. of Research, Concurrence] in Sen. Amends. to Assem. Bill No. 1436 (1997-1998 Reg. Sess.) as amended June 17, 1997, pp. 2-3.)" (*CDCR-Moya, supra*, 215 Cal.App.4th at p. 1111.)

*CDCR-Moya* said this statement of legislative intent affirmed what was already apparent from the language of the statute, i.e., the Legislature created a generally applicable time limit for investigating and bringing charges against the law enforcement officer, but excepted certain investigations "the timing of which it did not believe management could control. As this description could conceivably include both internal

15

and external workers' compensation fraud investigations, we cannot glean from this statement a clear legislative intent to limit the exception for workers' compensation fraud investigations solely to third party investigations." (*Id.* 215 Cal.App.4th at p. 1111.)

Iqbal argues we should not follow *CDCR-Moya,* because it involved only workers' compensation fraud investigations and therefore should not have talked about *CCPOA* or *Andrew Ruiz,* because Iqbal thinks it would be "impossible" to arbitrarily designate most administrative investigations as workers' compensation fraud investigations. We nevertheless consider *CDCR-Moya* helpful and persuasive.

*Telish, supra*, 234 Cal.App.4th 1479, an opinion filed while this appeal was pending, also criticized *CCPOA*. In *Telish*, a DOJ special agent in a disciplinary action sought to exclude from evidence self-incriminating statements he made in conversations with a subordinate employee, which Telish thought were confidential but which were recorded as part of DOJ's criminal investigation of Telish's alleged misconduct (which the District Attorney's Office eventually declined to prosecute criminally). (*Id.* at pp. 1484, 1494.) The subordinate had reported that Telish physically assaulted her and threatened to publicize sexually explicit photographs of her unless she recanted her admissions about a consensual sexual relationship with Telish. (*Ibid.*) Telish argued the recordings were inadmissible because they were obtained in a "sham criminal investigation" to enable DOJ to invoke Penal Code authorization to record conversations, when DOJ's real purpose was to use the evidence in administrative proceedings against him. (*Id.* at pp. 1486, 1492.) The *Telish* court noted this presented a factual question as to whether the criminal investigation was a sham, and the evidence supported the conclusion that it was not. (*Id.* at pp. 1492-1494.) As concerns us here, *Telish* stated: "Telish relies on language in [*CCPOA, supra*,] 82 Cal.App.4th 294, 'that the criminal investigations referred to in subdivision (i) of section 3303 . . . must be ones conducted primarily by outside agencies without significant active involvement or assistance by the employer.' [Citation.] However, *Van Winkle* noted 'there is no language in [POBRA]

16

which supports this interpretation.' [Citations to *Van Winkle* and *CDCR-Moya*.]" (*Telish, supra*, 234 Cal.App.4th at p. 1495, fn. 9.)

We agree with the cases criticizing *CCPOA*. We need not rely on CDCR's citation of a case holding that similar tolling language in a Los Angeles city charter applied to internal criminal investigations. (*Lucio v. City of Los Angeles* (2008) 169 Cal.App.4th 793.)

We conclude limitations period was tolled for the entire duration of CDCR's criminal investigation, such that the Notice of Adverse Action was timely under the timeline factually found by SPB.

## DISPOSITION

We affirm the trial court's judgment granting the writ petition and ordering a writ of mandate directing SPB to vacate its decision that the limitations period had expired, reinstate the Notice of Adverse Action, and conduct further proceedings on the merits of Iqbal's administrative appeal. CDCR shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278.)


      HULL      , Acting P. J.


We concur:


     ROBIE     , J.


     HOCH     , J.