[Crim. No. 6197. Fifth Dist. June 30, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
FERNIE VELEZ, Defendant and Appellant.

COUNSEL

Roger Harden Spaulding, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Robert D. Marshall and Eileen Ceranowski, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**HANSON (P. D.), J.**—Appellant was convicted by a jury of involuntary manslaughter (Pen. Code, § 192, subd. 2). He was awarded probation with the condition that he serve 180 days in the county jail.

### THE FACTS

On an afternoon in the summer of 1981, appellant, an officer with the Huron Police Department, returned to the station at approximately 3 p.m.

after working the 7 a.m. to 3 p.m. shift. He was accompanied by Officer Mike Fanon.

Sandra Perez, the morning police dispatcher, Ralph Garcia, a 16-year-old janitor, Sonia Macias, a 15-year-old janitor, Theresa Martinez, the afternoon police dispatcher, and Alice Cordero, a 16-year-old office aide at city hall, were present and in a jovial mood. Upon arriving at the station, appellant removed the firearm from his holster. He removed the magazine from the weapon and the round which was in the chamber. He placed the round in the magazine and then inserted the magazine into the firearm. Sergeant Kenneth Abell of the Fresno County Sheriff's office testified that once the firearm was placed in this condition it could be fired only by manipulating the slide so as to place a round in the chamber of the weapon.

Appellant placed his firearm on or near the dispatcher's desk in the front room of the station and went into the sergeant's office to the rear of the front room to get his clothes. Appellant took off his shirt and noticed that Garcia had picked up his firearm. Appellant yelled at Garcia to put down the gun. Garcia placed the gun on top of appellant's clothes on the sergeant's desk.

Macias, without appellant's knowledge, picked up the gun from the dispatcher's desk. Cordero dared her to point the gun at herself. Macias did so. After Macias handled the gun for 30 seconds, Garcia took it from her. Garcia handled the gun for a few seconds before appellant instructed him to put it down. Both Macias and Garcia denied they had operated the weapon in any manner.

After changing his clothes, appellant observed Cordero take some of his money from the sergeant's desk. When Cordero went to the front door of the police station as if to depart, appellant jokingly told her she was stealing his money and he would call a cop. He effected a two-handed grip on his firearm and pointed it at Cordero. The weapon discharged and fatally wounded Cordero.

Sergeant Abell subsequently examined appellant's firearm and determined that the weapon was in perfect functioning order. Abell testified that trainees at the police academy are told to treat all firearms as if they are loaded unless a personal inspection shows otherwise. Trainees are also instructed to refrain from all horseplay with firearms.

### DEFENSE

Appellant testified that he fired the fatal shot, but denied that he placed a round in the chamber of the gun. Appellant had absolutely no idea how a round had found its way into the chamber.

In closing argument, defense counsel urged that it was entirely reasonable for appellant to believe that the gun could not be fired. Counsel also emphasized that Garcia handled the gun, inferentially contending it was Garcia who placed the round in the chamber of appellant's firearm.

DISCUSSION

I

■ On the morning set for trial, the court conducted an evidentiary hearing pursuant to Evidence Code section 402.[1] Appellant sought to suppress several statements he had made to Detective Ross Kelly of the Fresno County Sheriff's Department. Appellant made two statements to Kelly at the Huron Police Department after the shooting of Cordero. The second statement was tape recorded. Later that evening appellant made another statement which was taped at the Fresno County Sheriff's Department. At no point during the interviews was appellant apprised of his *Miranda*[2] rights. Appellant was not in custody nor under arrest. After the Fresno interview appellant returned home.

At the evidentiary hearing, appellant conceded for the most part that there was no need for *Miranda* warnings, because he was not subjected to custodial interrogation.[3] (*Miranda* v. *Arizona, supra,* 384 U.S. 436, 478 [16 L.Ed.2d 694, 726]; *People* v. *Sam* (1969) 71 Cal.2d 194, 202 [77 Cal.Rptr. 804, 454 P.2d 700].) However, appellant urged that his statements were inadmissible pursuant to Government Code section 3303, subdivision (g).[4] The trial court rejected the contention and appellant renews his argument on appeal. We reject appellant's contention.

Section 3303 is part of the Public Safety Officers Procedural Bill of Rights Act. (Gov. Code, §§ 3300-3311.) The purpose of the act is to encourage

---

[1]Evidence Code section 402 provides: "(a) When the existence of a preliminary fact is disputed, its existence or nonexistence shall be determined as provided in this article. [¶] (b) The court may hear and determine the question of the admissibility of evidence out of the presence or hearing of the jury; but in a criminal action, the court shall hear and determine the question of the admissibility of a confession or admission of the defendant out of the presence and hearing of the jury if any party so requests. [¶] (c) A ruling on the admissibility of evidence implies whatever finding of fact is prerequisite thereto; a separate or formal finding is unnecessary unless required by statute."

[2]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

[3]Near the close of the hearing, appellant made a belated argument that his second taped interview should be excluded on the basis that he had not received his *Miranda* rights. The trial court rejected this contention. Appellant does not raise this point in his appellate briefs.

[4]Government Code section 3303, subdivision (g), provides: "If prior to or during the interrogation of a public safety officer it is deemed that he may be charged with a criminal offense, he shall be immediately informed of his constitutional rights."

"the maintenance of stable employer-employee relations, between public safety employees and their employers." (Gov. Code, § 3301.) In *White* v. *County of Sacramento* (1982) 31 Cal.3d 676, 681 [183 Cal.Rptr. 520, 646 P.2d 191], the Supreme Court stated "that the act is concerned primarily with affording individual police officers certain procedural rights during the course of proceedings which might lead to the imposition of penalties against them [citations] . . . ." (Also see *Baggett* v. *Gates* (1982) 32 Cal.3d 128, 135 [185 Cal.Rptr. 232, 649 P.2d 874]; cataloging the various rights provided by the act.)

Section 3303 provides certain rights to a public safety officer who is subjected to interrogation "which may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment." Subdivision (g) provides: "If prior to or during the interrogation of a public safety officer it is deemed that he may be charged with a criminal offense, he shall be immediately informed of his constitutional rights."

Appellant urges that the Legislature intended to give public safety officers greater *Miranda* rights than are possessed by the general public. Thus, appellant contends that Detective Kelly should have advised him of his *Miranda* rights even though he was not subjected to custodial interrogation. (See *Miranda* v. *Arizona, supra,* 384 U.S. 436, 478 [16 L.Ed.2d 694, 726].) Appellant concludes that section 3303 requires application of the exclusionary rule found in *Miranda.*[5]

While appellant raises an interesting point, he fails to note that section 3303 does not apply to the facts of this case. As stated in its initial paragraph, section 3303 applies where a "public safety officer is under investigation and subjected to interrogation *by his commanding officer, or any other member of the employing public safety department,* . . ." (Italics added.) Here, appellant, a member of the Huron Police Department, was interrogated by Kelly, a detective of the Fresno County Sheriff's Department. By its own terms, section 3303 does not apply to the facts of this case.

---

[5]The People contend that section 3303 is inapplicable because Kelly had no intention to arrest appellant or to develop information which could be used in later disciplinary proceedings. However, section 3303 applies to interrogations "which could lead to punitive action, . . ." It was obvious that appellant could be subject to disciplinary action.

The People also contend that subdivision (g) is inapplicable, because Kelly was engaged only in a preliminary investigation. However, Kelly testified that he planned to give the fruits of his investigation to the district attorney. Consequently, under subdivision (g) appellant might well "be charged with a criminal offense, . . ."

Lastly, the People contend that subdivision (g) does not provide for the remedy of exclusion of evidence. The People ignore the rule of statutory interpretation that a statute declaring a right should be deemed to contain a remedy. (*Bermite Powder Co.* v. *Franchise Tax Board* (1952) 38 Cal.2d 700, 703 [242 P.2d 9]; Civ. Code, § 3523.)

## II

Appellant next contends that the trial court erred by refusing to give two requested instructions, CALJIC Nos. 4.35 and 4.45. The refusal to give the two instructions was not error.

■ CALJIC No. 4.35[6] provides that a reasonable mistake of fact may negate criminal intent. Appellant requested the instruction on the theory that he reasonably believed that his gun was incapable of being fired. In seeking this instruction, appellant misconceived the mental state required for a conviction of involuntary manslaughter.

In *People* v. *Penny* (1955) 44 Cal.2d 861 [285 P.2d 926], the Supreme Court construed the involuntary manslaughter statute (Pen. Code, § 192, subd. 2), and held that one cannot be found liable under the statute unless criminal negligence is shown. (*Id.*, at p. 879.) In reaching this conclusion, the court cited Penal Code section 20. (*Ibid.*)

Penal Code section 20 provides: "In every crime or public offense there must exist a union, or joint operation of act and intent, *or* criminal negligence." (Italics added.) A showing of criminal negligence, as required for involuntary manslaughter, may be made without proving any specific or general intent on the part of the defendant. Criminal *intent* is shown by the defendant's knowing and wilful act. (*People* v. *Battin* (1978) 77 Cal.App.3d 635, 658, fn. 19 [143 Cal.Rptr. 731, 95 A.L.R.3d 248].) "The defendant is presumed to have intended all he did and all consequences thereof." (*Ibid.*) Criminal *negligence* is shown in a far different manner. "'A person acts *negligently* and with respect to a material element of an offense *when he should be aware* of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's *failure to perceive it,* considering the nature and purpose of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.' (Italics added.) (See Model Pen. Code, § 2.02 (Final Draft) May 4, 1962, p. 26.)" (*People* v. *Budish* (1982) 131 Cal.App.3d 1043, 1047 [182 Cal.Rptr. 653].)

In order to be guilty of involuntary manslaughter (i.e., criminal negligence) under the facts of this case, it was only necessary for appellant to

---

[6]CALJIC No. 4.35 provides: "An act committed or an omission made under an ignorance or mistake of fact which disproves any criminal intent is not a crime. [¶] Thus a person is not guilty of a crime if he commits an act or omits to act under an honest and reasonable belief in the existence of certain facts and circumstances which, if true, would make such act or omission lawful."

fail to perceive the risk of pointing a potentially hazardous weapon at Cordero.[7] CALJIC No. 4.35, involving the negation of criminal intent, properly was refused.

We disagree with appellant's contention that *Somers* v. *Superior Court* (1973) 32 Cal.App.3d 961 [108 Cal.Rptr. 630] requires a different result. There, the court stated: "[C]riminal liability is premised on intentional violations of the law, that is, conduct characterized by criminal intent . . . . Negligent manslaughter, in contrast, entails the imposition of penal consequences for unintended action. [Citations.]" (*Id.*, at p. 967.) Thus, *Somers* is entirely consistent with our analysis.

■ Appellant next contends the trial court erred by denying his request for CALJIC No. 4.45.[8] Appellant requested the instruction at the conference held prior to closing argument. The prosecutor objected and contended that CALJIC No. 5.00[9] was the proper instruction. The trial court tended to agree with the prosecutor since the comment to CALJIC No. 4.45 stated that "[w]here offense charged is a homicide, use Instruction 5.00 on excusable homicide." (CALJIC No. 4.45 (4th ed. 1979) p. 143.)[10]

Nevertheless, appellant continued to argue that No. 5.00 should not be given, because it contained language potentially prejudicial to his cause. Appellant objected to the language which provides that a homicide is excusable if "the person causing the death acted with that care and caution which would be exercised by an ordinarily careful and prudent individual under like circumstances." In appellant's view, this language is misleading

---

[7]Parenthetically, we note that a defendant may not be convicted of involuntary manslaughter unless his conduct was such as to evidence " 'a disregard of human life or an indifference to consequences.' " (*People* v. *Penny, supra*, 44 Cal.2d 861, 879.) Here, appellant pointed his firearm at Cordero even though he knew Garcia had handled it. These facts support the jury's finding that appellant was guilty of involuntary manslaughter.

[8]CALJIC No. 4.45, as slightly modified by appellant, provides: "When a person commits an act or makes an omission through misfortune or by accident under circumstances that show no evil purpose, intention or [criminal] negligence, he does not thereby commit a crime."

[9]CALJIC No. 5.00 provides: "The unintentional killing of a human being is excusable and not unlawful when committed by accident and misfortune in the performance of a lawful act by lawful means and where the person causing the death acted with that care and caution which would be exercised by an ordinarily careful and prudent individual under like circumstances."

[10]Although the comment to CALJIC No. 4.45 is silent as to its rationale, we note that Penal Code section 195 contains a specific provision which provides for the defense of accident and misfortune in a homicide prosecution. Penal Code section 195 states in part: "Homicide is excusable in the following cases:

"1. When committed by accident and misfortune, in lawfully correcting a child or servant or in doing any other lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent."

because it defines a civil negligence standard of conduct, whereas proof of involuntary manslaughter requires " 'a higher degree of negligence than is required to establish negligent default on a mere civil issue.' " (*People* v. *Penny, supra,* 44 Cal.2d 861, 879.)

Despite defense counsel's persistent argument for the giving of No. 4.45, the trial court was unpersuaded and held that No. 5.00 would be given, to the exclusion of No. 4.45. After the parties presented closing argument, appellant *requested* that No. 5.00 not be given. The court acceded to this request and neither No. 4.45 nor No. 5.00 was given.

Appellant raises the same argument made in the trial court and notes that the prosecution has the burden of showing conduct which was so negligent " 'as to be incompatible with a proper regard for human life, or, in other words, a disregard of human life or an indifference to consequences.' " (*People* v. *Penny, supra,* 44 Cal.2d 861, 879.) Because No. 5.00 provides that a homicide is excusable if the defendant acted as would a "careful and prudent individual under like circumstances," appellant concludes that No. 5.00 is a misleading and confusing instruction in that it could tempt the jury to return a guilty verdict on the basis of a showing of mere civil negligence. We disagree.

The jury was properly instructed as to the prosecution's burden of proving criminal negligence. The jury was first instructed pursuant to appellant's request, that "[m]*ere negligent conduct* is not the legal equivalent to conduct without due caution and circumspection as defined in these instructions."[11] (Italics added.) The jury was then instructed pursuant to CALJIC No. 8.46[12] that a guilty verdict could not be returned unless the defendant's negligent conduct was so "aggravated, reckless and gross" as to evidence a "disregard for human life or an indifference to consequences."

CALJIC No. 5.00 is not contrary to the above-cited instructions. It simply provides that "careful and prudent" conduct is not punishable. When the instructions the court intended to give, including No. 5.00, are read togeth-

---

[11]Penal Code section 192, subdivision 2, provides in relevant part that a death resulting from a lawful act committed "without due caution and circumspection" constitutes involuntary manslaughter.

[12]CALJIC No. 8.46 provides: "The term 'without due caution and circumspection' as used in these instructions refers to negligent acts which are aggravated, reckless and gross and which are such a departure from what would be the conduct of an ordinarily prudent or careful man under the same circumstances as to be *contrary to a proper regard for human* life or, in other words, a disregard for human life or an indifference to consequences. The facts must be such that the fatal consequences of the careless or negligent acts could reasonably have been foreseen and it must appear that the death was not the result of misadventure but the natural and probable result of a reckless or grossly negligent act."

er, they correctly instruct the jury that a careful individual is not guilty of criminal negligence, whereas an individual who engages in aggravated and reckless conduct is culpable under the law.[13] These instructions would have instructed the jury properly as to the prosecutor's burden of proof.[14] (See *People* v. *Clem* (1980) 104 Cal.App.3d 337, 345-346 [163 Cal.Rptr. 553]; holding that even the giving of erroneous instructions may be remedied by other correct instructions.)

CALJIC No. 5.00 in the abstract may indicate that the jury could convict a defendant for mere civil negligence, but this is not true when the jury is instructed correctly as to the prosecutor's burden of proving criminal negligence. Thus, the trial court did not err in refusing No. 4.45 in favor of No. 5.00.

The trial court also acted properly in honoring appellant's belated request to refrain from giving CALJIC No. 5.00. If appellant preferred not to have an instruction on accident and misfortune, it was his prerogative. (See generally, *People* v. *Wickersham* (1982) 32 Cal.3d 307, 330-335 [185 Cal.Rptr. 436, 650 P.2d 311]; holding that the giving of proper instructions may be waived for express tactical reasons.) However, appellant's waiver of the giving of No. 5.00 did not require the trial court to give No. 4.45. The court acted properly.

## III

Appellant alleges that three instances of prosecutorial misconduct occurred during closing argument. He asserts that the prosecutor: improperly argued CALJIC No. 5.00; improperly referred to the fact the jury would not be present, but for the death of the victim; and improperly argued facts

---

[13]The jury was instructed that they were to consider all the instructions as a whole and to regard each in the light of all the others. (CALJIC No. 1.01.)

[14]*People* v. *Bernhardt* (1963) 222 Cal.App.2d 567 [35 Cal.Rptr. 401], cited by appellant, is inapposite. There, in a prosecution for involuntary manslaughter the jury was given an improper instruction defining civil negligence. (*Id.,* at p. 588.) Despite the fact that the jury also was instructed properly that the involuntary manslaughter statute (Pen. Code, § 192, subd. 2) was not violated unless the defendant acted with a "disregard for human life or an indifference to consequences," it was held that the giving of the improper instruction was error. (*Id.,* at p. 590.) This was so because the civil negligence instruction was "seriously erroneous." (*Id.,* at p. 590.)

Appellant contends a similar situation is presented in this case. We disagree. Unlike the *Bernhardt* jury, the jury here would not have been given an erroneous instruction as to the degree of negligence which the prosecutor was required to show. Rather, they would have been simply instructed pursuant to CALJIC No. 5.00 that a "careful and prudent individual" could not be punished. As has been detailed above, this was a correct instruction when read in conjunction with the remaining instructions. Thus. the instant jury was not given the "seriously erroneous instruction" given in *Bernhardt.* (*Id.,* at p. 590.)

not in evidence. While the prosecutor erred in two respects, appellant's cause was not prejudiced.

■ Appellant urges that it was error for the prosecutor to mention CAL-JIC No. 5.00 during closing argument, particularly when No. 5.00 was not given by the court. However, as previously discussed, No. 5.00 was not an incorrect statement of the law, nor an improper instruction. Furthermore, after the trial court agreed to refrain from giving No. 5.00 as appellant requested, it offered to reopen closing arguments to enable the parties to argue the case as if No. 5.00 were not to be given. Defense counsel refused the offer and failed to request an admonition on the subject. Accordingly, the point is waived on appeal. (*People* v. *Green* (1980) 27 Cal.3d 1, 27, 34 [164 Cal.Rptr. 1, 609 P.2d 468].)

■ Appellant next urges that the prosecutor committed misconduct by stating "[w]e wouldn't be here if someone were not dead." This was improper argument. Criminal negligence must be determined from the conduct of the defendant and not "from the resultant harm." (*Somers* v. *Superior Court, supra,* 32 Cal.App.3d 961, 969.)

However, appellant was not prejudiced by the improper comment. The jury was admonished that "the charged crime does require a finding of whether or not a person is killed. Nonetheless, that is a fact that you must not let your emotions get ahold of." This admonition was adequate to cure any potential prejudice from the improper comment. (*People* v. *Ryan* (1981) 116 Cal.App.3d 168, 184 [171 Cal.Rptr. 854].)

■ Lastly, appellant asserts the prosecutor committed misconduct by arguing facts which were not in evidence. While alluding to appellant's firearm training as a member of the armed forces, the prosecutor stated "when I was in the service we had to take the darn thing apart and reassemble it. We had to know everything about the weapon, . . ." Appellant objected and the court admonished the prosecutor to limit his argument to the evidence.

It is error to argue facts not in evidence. (*People* v. *Galloway* (1979) 100 Cal.App.3d 551, 564 [160 Cal.Rptr. 914].) Here, however, it is unlikely that appellant's cause was prejudiced by the prosecutor's brief reference to his personal military experience.[15] We note that Sergeant Abell testified as to the special training which appellant probably received in the police academy. Any harm caused by the prosecutor's misconduct did not result in a miscarriage of justice. (*People* v. *Green, supra,* 27 Cal.3d 1, 35-36.)

---

[15]The jury was instructed that statements made by the attorneys are not evidence. (CALJIC No. 1.02.)

The judgment is affirmed.

Franson, Acting P. J., and Martin, J., concurred.