Filed 5/31/22  P. v. Marshall CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SKYLAR MARIE MARSHALL,<br><br>    Defendant and Appellant. | 2d Crim. No. B315102<br>(Super. Ct. No. 20F-04344)<br>(San Luis Obispo County) |

The People appeal an order granting Skylar Marie Marshall's motion pursuant to Penal Code[1] section 995 to dismiss the information charging her with second degree murder.  The People contend the trial court erred in granting the motion because there was sufficient evidence to support the murder charge.  We affirm.

---

[1] Further unspecified statutory references are to the Penal Code.

# FACTUAL AND PROCEDURAL HISTORY

The People filed a complaint alleging Marshall committed one count of murder (§ 187, subd. (a)) and that she personally and intentionally discharged a firearm causing death (§ 12022.53, subd. (d)).

In July 2020, police officers responded to the apartment in which Marshall and her husband (A.H.) resided after reports of a gunshot and the sound of a woman screaming. When the officers arrived, they saw A.H. seated on the couch with a bloody towel on his face. He had a large wound in the center of his forehead. He died at the scene.

The officers searched the apartment and found a gun in their bedroom. A gun magazine was next to the gun. When an officer pulled the slide back on the gun, a live round fell out of the chamber.

An officer testified that Marshall appeared "obviously distraught," "inconsolable," and was crying. During an interview, Marshall told the officer that "[she and A.H.] were playing with the gun and [she] did not know it was loaded."

During an interview with another officer, Marshall said that A.H. had bought the gun two months before and that she had gone to the shooting range with him. When they went to the shooting range, A.H. was the only one to load and unload the magazine. A.H. had shown her the functions of the gun, and Marshall had fired the gun five times in the past.

Marshall said that on a weekly basis, A.H. would bring the gun out to the living room and "manipulate it" and "check for function."

On the evening of the shooting, A.H. brought the gun out and was "manipulating it" and "messing around with it" in

the living room.  She and A.H. began "messing around [with the gun] . . . .  And then at one point, she had the gun and she didn't know it was loaded, it went off."  She admitted that she pulled the trigger.

The next day, officers interviewed Marshall again at the police station.  Marshall explained that when she put the gun up against A.H.'s head, she was expecting a reaction.  He made eye contact with her, but remained "straight faced" and did not have a physical or verbal reaction to her putting the gun to his head.  Marshall felt "confused" and "upset that he wasn't reacting to her."  She said she then pulled the trigger with the intent to "get a reaction from [A.H.]."  After she shot A.H., she put the gun in the case and put it in their bedroom.  She "might have" unloaded the gun's magazine.

Marshall said that the gun was usually unloaded.  When asked if she knew "one hundred percent that the gun was unloaded" at the time of the incident, she responded, "No."  Marshall also said that the gun would normally be stored with an empty magazine with a loaded magazine next to the gun.  She said she did not check which magazine was inside the gun that night, so "she had no way of knowing it was loaded or not."

Marshall said that in the past, A.H. would jokingly point the gun at her or the cat.  There were instances where they would point the gun at each other's heads in a "joking" way.  On one of those occasions, A.H. told her to make sure the gun was unloaded and to check the magazine and the gun to ensure there were no bullets in it.  Marshall also said that she knew that she should treat any firearm as a loaded firearm.

The officers also interviewed the couple's roommate, Ysidro Alvarez.  Alvarez said that he, Marshall, and A.H. had

3

spent the day together and everything appeared normal. Alvarez was inside the apartment and sleeping in his bedroom when the shooting occurred. Marshall called out for help after the gun was fired. When he came out to the living room, he saw A.H. on the couch and Marshall with a gun in her hand. Alvarez told her to put the gun away. Alvarez grabbed a towel and put pressure on A.H.'s wound until the police arrived.

Alvarez said that he was "uncomfortable" with having firearms in the apartment. He said that A.H. bought a handgun and AR-15 and that he often saw A.H. cleaning the guns. He had also seen Marshall "manipulating" the handgun in the past. He described one occasion when A.H. and Marshall walked into his bedroom, and Marshall "pointed the handgun at him and pulled the trigger." Alvarez said he was "alarmed," but Marshall laughed and joked about it. Marshall then pointed the handgun at A.H.'s head and pulled the trigger. Alvarez said he told A.H. and Marshall the next day that their actions were unsafe and told them not to do it again. Marshall responded by laughing and downplaying the incident.

*Preliminary Hearing Ruling*

At the conclusion of the preliminary hearing, the magistrate judge found there was no probable cause to support a murder charge and held Marshall to answer for involuntary manslaughter. In his ruling, the judge stated the following:

> "The Court: Well, this is all a matter of degrees, there's no doubt about it. And the question, to some extent, becomes was her reckless conduct so reckless that we treat it the same as someone who intentionally, knowingly, loading the gun herself, point the gun at

4

someone's forehead and kills them, and I just don't think that's the case here. I think my Russian roulette analogy is—that basically summarizes how I feel.

"I believe the evidence today has shown that she did not believe that gun was loaded. . . . [¶]

"Her husband brought this gun out. Her husband was the more well-trained person; he's the one who trained her. And based on the evidence that I saw today, I believe it was reasonable for her to assume that it was not loaded. His own reaction to the gun pointed at his head, the evidence we've heard today is uncontroverted that he didn't react to it suggests that he believed the gun was unloaded; and even if it didn't[] suggest that for some reason. If for some reason he was trying to up the ante in this ridiculous affair by leaving the gun loaded, the person holding the gun in her position, could reasonably take that reaction as an assertion the gun was not loaded. He's the one that brought the gun out and was in control of the gun.

"I would also mention her reaction after shooting her husband is consistent with an accident. Her reaction to the police officers that night, her reaction to the police officers the next day and the days thereafter, were consistent with an accident. And so while I am in no way suggesting that this was anything but felonious conduct, it was. I don't believe it was tantamount to murder. I don't believe it

was tantamount to malice, and I don't believe there's probable cause for that argument.

"I'm going to hold her to answer for involuntary manslaughter and 12022.5, and the People can file what that [sic] believe has been shown. But I hope they'll seriously consider my comments before they do that."

*Section 995 Motion*

Following the preliminary hearing, the People filed an information charging Marshall with one count of murder (§ 187, subd. (a)) and alleging that she personally used a firearm (§ 12022.5, subd. (a)).

Marshall filed a motion to dismiss the murder charge pursuant to section 995. The trial court granted the motion. The court stated that it did not "believe there's probable cause to hold the defendant to answer for murder, I don't think there's sufficient evidence. And I think that the judge—the magistrate did make factual findings" that would preclude a murder charge.

## DISCUSSION

The People contend the trial court erred when it granted Marshall's section 995 motion because there was sufficient evidence to support a murder charge. We disagree.

At a preliminary hearing, the magistrate's role is to determine whether there is sufficient cause to believe the defendant is guilty of the alleged offense(s). (§ 872.) "'Within the framework of his limited role, . . . the magistrate may weigh the evidence, resolve conflicts, and give or withhold credence to particular witnesses. [Citation.]'" (*People v. Slaughter* (1984) 35 Cal.3d 629, 637 (*Slaughter*).)

6

If a magistrate does not hold a defendant to answer on a particular offense, the prosecution may reallege the offense in an information, *provided the magistrate did not make any factual findings that negate the offense.* (§ 739, emphasis added.) Section 739 provides that it "shall be the duty of the district attorney . . . to file in the superior court . . . within 15 days after the commitment, an information against the defendant which may charge the defendant with either the offense or offenses named in the order of commitment or any offense or offenses shown by the evidence taken before the magistrate to have been committed."

The defendant may move to dismiss an information on the ground that "the defendant ha[s] been committed without reasonable or probable cause." (§ 995, subd. (a)(2)(B).) "When the defendant challenges the district attorney's election to include charges for which defendant was not held to answer at the preliminary hearing, '[t]he character of judicial review under section 739 depends on whether the magistrate has exercised his power to render findings of fact. If he has made findings, those findings are conclusive if supported by substantial evidence. [Citations.] If he has not rendered findings, however, the reviewing court cannot assume that he has resolved factual disputes or passed upon the credibility of witnesses. A dismissal unsupported by findings therefore receives the independent scrutiny appropriate for review of questions of law. . . .' [Citation.] 'In summary, cases arising under section 739 recognize a clear distinction: findings of fact must be sustained if supported by substantial evidence, *but a finding of lack of probable cause, unsupported by any factual findings, is reviewed as an issue of law.* Absent controlling factual findings, if the

7

magistrate dismisses a charge when the evidence provides a rational ground for believing that defendant is guilty of the offense, his ruling is erroneous *as a matter of law,* and will not be sustained by the reviewing court.' [Citation.]" (*People v. Bautista* (2014) 223 Cal.App.4th 1096, 1101 (*Bautista*).)

"'[I]n proceedings under section 995 . . . the superior court . . . sits merely as a reviewing court . . . .' 'On review by appeal or writ, moreover, the appellate court in effect disregards the ruling of the superior court and directly reviews the determination of the magistrate holding the defendant to answer.' [Citation.]" (*Bautista*, *supra*, 223 Cal.App.4th at p. 1101.)

*Analysis*

Here, the magistrate made a factual finding that Marshall "did not believe that gun was loaded" and for that reason, lacked malice. Substantial evidence supports this finding. The magistrate noted that given A.H.'s lack of reaction when Marshall pointed the gun at his head, it was "reasonable for her to assume that it was not loaded." And, Marshall's reaction after she fired the gun was "consistent with an accident." Moreover, Marshall told the officers she did not know the gun was loaded and that the gun was usually unloaded.

Because the magistrate made a conclusive factual finding, we must next determine whether this finding was "'fatal to the asserted conclusion that [murder] was committed.'" (*Slaughter*, *supra*, 35 Cal.3d at p. 639.) It is.

To establish probable cause in a section 995 motion, "the People must make some showing as to the existence of each element of the charged offense." (*Thompson v. Superior Court* (2001) 91 Cal.App.4th 144, 148.) "'Evidence that will justify a

8

prosecution need not be sufficient to support a conviction.'" (*People v. McCann* (2019) 41 Cal.App.5th 149, 155.) "[A]n indictment or information should be set aside only when there is a total absence of evidence to support a necessary element of the offense charged." (*People v. Superior Court (Jurado)* (1992) 4 Cal.App.4th 1217, 1226.)

Second degree murder is the unlawful killing with malice aforethought, but without willfulness, premeditation, and deliberation. (§§ 187, subd. (a), 189.) Malice can be express or implied. (§ 188.) Malice is implied when the killing is "proximately caused by '"an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life."' [Citation.] In short, implied malice requires a defendant's awareness of engaging in conduct that endangers the life of another—no more, and no less." (*People v. Knoller* (2007) 41 Cal.4th 139, 143.)

Involuntary manslaughter is the unlawful killing of a human being without malice. (§ 192.) "'[I]mplied malice contemplates a subjective awareness of a higher degree of risk than does gross [i.e., criminal] negligence, and involves an element of wantonness which is absent in gross negligence. [Citations.]' [Citation.] 'A finding of gross negligence is made by applying an *objective* test: if a *reasonable person* in defendant's position would have been aware of the risk involved, then defendant is presumed to have had such an awareness. [Citation.] However, a finding of implied malice depends upon a determination that the defendant *actually appreciated* the risk involved, i.e., a *subjective* standard. [Citation.]' [Citation.]"

9

(*People v. Mehserle* (2012) 206 Cal.App.4th 1125, 1141-1142 (*Mehserle*), citing to *People v. Watson* (1981) 30 Cal.3d 290, 296.)

Here, the magistrate's finding that Marshall did not believe the gun was loaded precludes a finding of malice. A person who does not believe a gun is loaded cannot act with *conscious* disregard for life or "*actually appreciate*[] the risk" of pointing a gun at another person. (*Mehserle*, *supra*, 206 Cal.App.4th 1142.) At most, the evidence found credible by the magistrate here shows an objectively negligent failure to perceive the risk of handling a firearm, which may be sufficient for involuntary manslaughter. (See e.g., *People v. Velez* (1983) 144 Cal.App.3d 558, 565-566 [the defendant could be convicted of involuntary manslaughter where he failed to perceive the risk of pointing a gun that he mistakenly thought was incapable of being fired].)

The People rely on several cases, including *People v. McNally* (2015) 236 Cal.App.4th 1419, *People v. Nieto Benitez* (1992) 4 Cal.4th 91, and *People v. Boatman* (2013) 221 Cal.App.4th 1253, all of which involve second degree murder convictions resulting from accidental shootings. Those cases are distinguishable because they did not involve a binding factual conclusion that the defendant subjectively did not believe the gun was loaded. (See in contrast, *McNally*, *supra*, at pp. 1424-1426 [evidence showed the defendant was aware of the risk of pointing a loaded firearm]; *Nieto Benitez*, *supra*, at pp. 109-110 [evidence showed that the defendant brandished a firearm, which he knew was loaded]; *Boatman*, *supra*, at p. 1263 [the defendant was aware the gun was loaded and pulled the hammer back on the gun].) Because the magistrate's finding negates the possibility of an implied malice murder, the trial court properly granted the

10

motion to dismiss the murder charge, and instead "h[e]ld [Marshall] to answer for involuntary manslaughter and 12022.5."

## DISPOSITION

The order (granting the section 995 motion) is affirmed.

<u>NOT TO BE PUBLISHED.</u>



TANGEMAN, J.


We concur:


GILBERT, P. J.


YEGAN, J.


11

Michael L. Duffy, Judge

Superior Court County of San Luis Obispo

_____

Dan Dow, District Attorney, Eric Dobroth, Assistant District Attorney, and Crystal Tindell Seiler, Deputy District Attorney, for Plaintiff and Appellant.

Mark R. Feeser, under appointment by the Court of Appeal, for Defendant and Respondent.