Filed 6/30/25  P. v. Ceja CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B333328 |
| Plaintiff and Respondent, | (Super. Ct. No. YA106055-01) (Los Angeles County) |
| v. | |
| MARCO ANTONIO CEJA, | |
| Defendant and Appellant. | |

Marco Antonio Ceja appeals from the judgment after a jury convicted him of voluntary manslaughter (Pen. Code,[1] § 192, subd. (a)) as a lesser included offense of murder and found true that he personally used a firearm (§ 12022.5, subd. (a)).[2]  Ceja pleaded no contest to unrelated charges of recklessly fleeing a

---

[1] All undesignated statutory references are to the Penal Code.

[2] Codefendant Brian Chase was jointly tried for murder and was acquitted.

peace officer (Veh. Code, § 2800.2) and felon in possession of a firearm (§ 29800, subd. (a)(1)).  The trial court sentenced Ceja to consecutive terms of six years for voluntary manslaughter, four years for use of a firearm, and eight months each for fleeing and felon in possession, for a total prison term of 11 years, 4 months.

Ceja contends the trial court erred when it instructed the jury regarding imperfect self-defense voluntary manslaughter, failed to instruct regarding imperfect self-defense involuntary manslaughter, and failed to provide additional instructions.  He also contends the evidence was insufficient to convict and cumulative error mandates reversal.  We affirm.

FACTUAL AND PROCEDURAL HISTORY

*Prosecution case*

Ceja and the victim, Guillermo Peinado, stole cars and trailers together.  About a month before the shooting, they argued about a trailer they had stolen together.  They ended up fighting each other with their fists and Ceja broke the windshield of Peinado's motorhome with a metal pipe.

Peinado had a BB gun or pellet gun and a paintball gun.  A mutual acquaintance of Ceja and Peinado could tell the BB gun was "fake" because it had duct tape on it and the tip was "not like a real gun."

Peinado had a close friend and neighbor, N.B.  They were "like brother and sister."  N.B. and Ceja were also friends.  Shortly before 10:00 p.m. in April 2022, Ceja visited N.B. at her makeshift dwelling in a homeless encampment.  Peinado was also there, and he and Ceja said "hi" to each other.  The exchange was "normal" and with "no violence."

Peinado left on a bicycle two or three minutes later.  After about a minute, Ceja followed him.

2

A surveillance video showed Peinado rode a bicycle away from the encampment and passed Ceja's truck. A few seconds later, Peinado rode the bicycle in the opposite direction towards Ceja. Ceja had his arm extended holding a handgun. N.B. heard one shot. Peinado got off the bicycle and ran. Ceja ran after him.

A police officer found Peinado groaning and lying on the ground in front of a house. A BB gun or pellet gun was within arm's reach of Peinado. Because the officer believed it was a firearm, he waited for backup before rendering aid. Peinado died of a single gunshot wound from a bullet that entered from the front in his abdomen and exited his rear torso.

In a *Perkins* operation,[3] Ceja spoke with two "cooperators"[4] placed in a jail cell with him. Ceja said he shot a "homie" who "was behaving really crazy." Ceja said that on three occasions when he tried to collect his drug sale profits, Peinado put a gun to Ceja's head. After the third time, Ceja looked for Peinado at his house "to tell him to stop messing with me." Ceja said he waited two days before Brian Chase called him with Peinado's location and told Ceja to kill him.

Ceja said he chased Peinado on the night of the shooting. Ceja hid in the bushes, then went after him and asked, "Hey, what's up?" Ceja said Peinado "tried to pull out the [gun]." Ceja said he shot Peinado once in the stomach and did not shoot again because his gun jammed.

---

[3] *Illinois v. Perkins* (1990) 496 U.S. 292.

[4] The "cooperators," also referred to as "paid actors," were briefed by police about the case. Then, posing as inmates, they had recorded conversations with Ceja to obtain information about the case.

*Defense case*

The defense presented evidence that Peinado had previously threatened Ceja. Months before the shooting, a neighbor saw Peinado break Ceja's truck's windows with a pipe. The neighbor told Ceja what Peinado had done. The neighbor also saw an incident in which Peinado rode up on a bicycle and argued with Ceja; Peinado threw down the bicycle, pulled a gun from his waistband, and pointed it at Ceja. In another incident, a man who worked with Ceja saw Peinado jump onto the trailer of a truck Ceja was in, point a firearm at him, and say "watch out for later."

*Ceja's testimony*

Ceja testified that when he discovered Peinado stole tools from Ceja's truck, they fought and hit each other. Ceja broke the window of Peinado's motorhome. Peinado ran into his motorhome, retrieved a firearm, and said he would kill Ceja. Peinado later confronted Ceja on the street, demanded $800 for the window, threatened to kill Ceja if he did not pay it, and pointed what appeared to be a "real" firearm at him. Peinado then put the firearm away and threatened to kill Ceja later. Ceja never paid Peinado.

Ceja said he purchased a loaded firearm because Peinado had threatened to kill him, and other people said Peinado was looking for him in order to kill him. Ceja kept the firearm with him wherever he went because he was afraid of Peinado.

The night of the shooting, Ceja saw Peinado ride his bicycle in the direction of Ceja's parked truck. Ceja chased him because he was concerned Peinado would steal from his truck. Peinado rode the bicycle past the truck, then toward Ceja. Although it was dark, when Peinado was four or five car lengths away, Ceja

4

saw Peinado's left arm was raised with the firearm pointed at him.  Ceja pulled out his firearm, pointed it at Peinado, and walked toward him.  Ceja shot Peinado because Peinado was pointing a firearm at him and he was afraid Peinado was going to shoot him.

*Closing arguments*

The prosecutor argued that Ceja was guilty of premeditated murder with express malice.  He questioned the position of Peinado's firearm while he was riding his bike, whether Ceja would have been able to see it four or five car lengths away on a dark street, and whether Ceja would have been able to quickly rack and aim the firearm.  He also argued that a videotape showed Ceja had already racked his firearm before arriving to the location of the shooting, and had his firearm out before Peinado pulled his firearm from his waistband.

Ceja's attorney argued that he acted in self-defense because he reasonably believed he was in imminent danger of being killed and that his use of deadly force was reasonable.  He said one of the videos showed Peinado raised his firearm before Ceja.

Neither party's argument discussed imperfect self-defense.

DISCUSSION

*Jury instruction principles*

"A trial court must instruct the jury, even without a request, on all general principles of law that are ' "closely and openly connected to the facts and that are necessary for the jury's understanding of the case." ' " (*People v. Burney* (2009) 47 Cal.4th 203, 246.)  "[A] trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence." (*People v. Breverman* (1998) 19 Cal.4th 142, 162, disapproved on other grounds in *People v.*

5

*Schuller* (2023) 15 Cal.5th 237, 260, fn. 7.) "In this context, substantial evidence is evidence from which reasonable jurors could conclude ' "that the lesser offense, but not the greater, was committed." ' " (*People v. Medina* (2007) 41 Cal.4th 685, 700.)

We apply the independent standard of review to claims of instructional error. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 919.) "In determining the correctness of jury instructions, we consider the entire charge of the court, in light of the trial record." (*Id.* at p. 926.)

*Voluntary manslaughter instruction*

Ceja contends the court erred in instructing the jury regarding voluntary manslaughter based on imperfect self-defense because there was insufficient evidence that his need to defend himself was objectively unreasonable. We disagree.

The court instructed the jury regarding perfect (complete) self-defense. (CALCRIM No. 505.) Without objection, the court also instructed with CALCRIM No. 571, which stated in part: "A killing that would otherwise be murder is reduced to voluntary manslaughter" if "[t]he defendant actually believed that he was in imminent danger of being killed or suffering great bodily injury," and "[t]he defendant actually believed that the immediate use of deadly force was necessary to defend against the danger," but "[a]t least one of those beliefs was unreasonable." It stated: "If you find that Guillermo Peinado threatened or harmed the defendant in the past, you may consider that information in evaluating the defendant's beliefs." It further stated: "The People have the burden of proving beyond a reasonable doubt that the defendant was not acting in imperfect [s]elf-defense. If the People have not met this burden, you must find the defendant not guilty of murder."

The court was obligated to instruct regarding imperfect self-defense voluntary manslaughter because it is a lesser included offense of murder and "the evidence raises a question as to whether all of the elements of the charged offense were present." (*People v. Breverman, supra*, 19 Cal.4th at p. 154.) The instruction given, CALCRIM No. 571, is a correct statement of the law. (*People v. Lopez* (2011) 199 Cal.App.4th 1297, 1306.)

Substantial evidence supported this instruction. Ceja testified that notwithstanding the darkness of the street and the distance between them, he saw Peinado pointing what appeared to be a firearm at him. As the trier of fact, the jury evaluated Ceja's credibility, the videotapes, and still photographs from the videotapes offered by both sides. The jury could have determined that when Ceja shot Peinado, he unreasonably believed that Peinado had already drawn his gun. Alternatively, the evidence could support the conclusion that Ceja knew Peinado had not drawn the gun, but had an actual but unreasonable belief that Peinado, armed with what appeared to be a gun in his waistband and approaching Ceja on a bicycle, posed an imminent danger of killing him or inflicting great bodily injury. The jury could also conclude from the videotapes that Ceja pointed his firearm while Peinado was still riding his bicycle and that this showed Ceja's belief in the necessity to use deadly force was unreasonable. And based on the prior incidents where Peinado pointed a firearm at Ceja and made unexecuted threats to kill him, coupled with Ceja's statements in the *Perkins* operation, the jury could also conclude Ceja did not have a reasonable belief he was in "*imminent* danger of being killed." (CALCRIM No. 571, italics added.) Any of these scenarios are supported by sufficient evidence to require an imperfect self-defense instruction.

*Correctness of voluntary manslaughter instruction*

Ceja also contends the voluntary manslaughter instruction was erroneous because it stated that imperfect self-defense applied if Ceja "actually believed that he was in imminent danger of being killed or suffering great bodily injury," and "actually believed that the immediate use of deadly force was necessary to defend against the danger," but "[a]t least one of those beliefs was unreasonable." (CALCRIM No. 571.) He contends an actual belief in the need to use deadly force is not required to establish imperfect self-defense. We again disagree.

The jury instruction correctly stated the law. Our Supreme Court has explained: "Self-defense, when based on a *reasonable* belief that *killing is necessary* to avert an imminent threat of death or great bodily injury, is a complete justification, and such a killing is not a crime. [Citations.] A killing committed when *that belief* is *unreasonable* is not justifiable. Nevertheless, 'one who holds an honest but unreasonable belief in the *necessity to defend* against imminent peril to life or great bodily injury does not harbor malice and commits no greater offense than manslaughter.' " (*People v. Elmore* (2014) 59 Cal.4th 121, 133–134, some italics added.)

Ceja relies upon *People v. Beck and Cruz* (2019) 8 Cal.5th 548, 648, which states in a shorthand manner that imperfect self-defense applies when " ' " 'a defendant killed another person because the defendant *actually*, but unreasonably, believed he was in imminent danger of death or great bodily injury.' " ' " A more complete explanation is given in *People v. Her* (2009) 181 Cal.App.4th 349, 353: "[T]he 'belie[f] in the need to defend' is described as *two* beliefs—(1) the belief in imminent danger of death or great bodily injury and (2) the belief in the need to use

8

deadly force to defend against that danger—the unreasonableness of *either* belief would be sufficient to transform perfect self-defense into imperfect self-defense." "Where the defendant kills while actually but *unreasonably* believing the use of deadly force was necessary, [the] defendant is considered to have acted in imperfect self-defense." (*People v. Sotelo-Urena* (2016) 4 Cal.App.5th 732, 744.)

Here, the accuracy of the imperfect self-defense instruction is evident when viewed in conjunction with the perfect self-defense instruction. Jurors were correctly instructed that perfect self-defense required findings that "[t]he defendant reasonably believed that he was in imminent danger of being killed or suffering great bodily injury" and "reasonably believed that the immediate use of deadly force was necessary to defend against that danger." (CALCRIM No. 505*; People v. Her*, *supra*, 181 Cal.App.4th at p. 353.) Thus, perfect self-defense would not apply if Ceja reasonably believed he was in danger but did not believe, or unreasonably believed, that deadly force was necessary.

We conclude the jury was properly instructed regarding the findings required for imperfect self-defense: actual belief as to the danger and actual belief as to the need for deadly force, but at least one of these beliefs was unreasonable. But even if the law did not require an actual belief in the need to use deadly force, Ceja was not prejudiced by the inclusion of this requirement in the jury instruction because the jury found all the requirements for imperfect self-defense were met. This benefited Ceja by reducing the offense from murder to voluntary manslaughter.

*Involuntary manslaughter instruction*

Ceja also contends the trial court erred by not instructing

9

the jury sua sponte regarding imperfect self-defense *involuntary* manslaughter.  We are not persuaded.

The jury was instructed, "A killing *that would otherwise be murder* is reduced to *voluntary manslaughter* if the defendant killed a person because he acted in imperfect self-defense." (CALCRIM No. 571, italics added.)  It was also instructed that murder requires express malice ("he unlawfully intended to kill") or implied malice (he "deliberately acted with conscious disregard for human life").  (CALCRIM No. 520.)  The jury thus found that Ceja killed Peinado with either an intent to kill or in conscious disregard for human life, but that malice was negated by imperfect self-defense.  When a defendant has either the intent to kill or "act[s] with a conscious disregard for life" and "kills in unreasonable self-defense, the killing is voluntary rather than involuntary manslaughter."  (*People v. Blakeley* (2000) 23 Cal.4th 82, 91 (*Blakeley*).)

A defendant who killed without malice, because they actually but unreasonably believed in having to act in self-defense, is guilty of "no less than voluntary manslaughter." (*People v. Rios* (2000) 23 Cal.4th 450, 460.)  "[W]hen a defendant kills in the actual but unreasonable belief that [they are] in imminent danger of death or great bodily injury, the doctrine of 'imperfect self-defense' applies to reduce the killing from murder to *voluntary manslaughter*."  (*People v. Cruz* (2008) 44 Cal.4th 636, 664, italics added.)

Ceja argues that imperfect self-defense serves only to negate malice, and an involuntary manslaughter conviction is warranted when there is an unlawful killing without intent to kill or conscious disregard for human life.  Our Supreme Court in *Blakeley* rejected the conclusion of *People v. Welch* (1982) 137

10

Cal.App.3d 834, 840 that an unintentional killing in unreasonable self-defense can only be involuntary manslaughter. (*Blakeley*, *supra*, 23 Cal.4th at p. 91.) In his dissent in *Blakeley*, Justice Mosk opined that the court should have instructed on imperfect self-defense involuntary manslaughter. (*Id.* at p. 99 [dis. opn. of Mosk, J.].) The majority had "no quarrel with [Mosk's] view" that "a defendant who kills in unreasonable self-defense may sometimes be guilty of involuntary manslaughter." (*Id.* at p. 91.) But because Ceja killed with intent to kill or with conscious disregard for life by intentionally shooting at Peinado, an involuntary manslaughter instruction was unwarranted. (*Id.* at p. 92.)

Involuntary manslaughter is killing without malice "in the commission of an unlawful act, not amounting to a felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection." (§ 192, subd. (b).) Ceja does not contend the "unlawful act" (misdemeanor-manslaughter) theory applies. Nor does he contend the "unlawful manner" (criminal negligence) theory applies.

Involuntary manslaughter applies where there is a "lack of 'due caution and circumspection,' " which is "the equivalent of 'criminal negligence,' " i.e., " 'the natural and probable result of a reckless or culpably negligent act.' " (*People v. Penny* (1955) 44 Cal.2d 861, 879–880.) " ' "The risk must be of such a nature and degree that the actor's *failure to perceive it*, considering the nature and purpose of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation." ' " (*People v. Velez* (1983) 144 Cal.App.3d 558, 565.) It applies, for

11

example, where the defendant " 'shot to frighten . . . but had no intention of killing or injuring anyone and did not aim at them.' " (*In re Ferrell* (2023) 14 Cal.5th 593, 607.)

But here there was no evidence the shooting was merely negligent. Ceja intentionally shot Peinado based on his perceived need for self-defense. "[W]hen, as here, the defendant indisputably has deliberately engaged in a type of aggravated assault the natural consequences of which are dangerous to human life, thus satisfying the objective component of implied malice as a matter of law, and no material issue is presented as to whether the defendant subjectively appreciated the danger to human life his or her conduct posed, there is no sua sponte duty to instruct on involuntary manslaughter." (*People v. Brothers* (2015) 236 Cal.App.4th 24, 35.) Accordingly, substantial evidence did not support an involuntary manslaughter instruction.

*Additional instructions*

Ceja contends the trial court erred by not instructing regarding "intentional killings," "weapons," and "assaultive crimes." We again disagree.

Ceja forfeited this claim by not requesting the instructions in the trial court. And because we conclude "the trial court adequately instruct[ed] the jury on the law, it ha[d] no duty to give clarifying or amplifying instructions absent a request." (*People v. Hernandez* (2010) 183 Cal.App.4th 1327, 1331; *People v. Estrada* (1995) 11 Cal.4th 568, 574.)

The contention also fails on the merits. There was no need to define "intentional killing" or "assaultive crime(s)" because these phrases do not appear in any instructions given to the jury. Reference to a "weapon" occurs only in the instruction regarding the enhancement for Ceja's personal use of a firearm, which was

12

indisputably a handgun.  (§ 12022.5, subd. (a); CALCRIM No. 3146.)

Whether Peinado's BB gun or pellet gun was in fact a weapon capable of killing or inflicting great bodily harm was irrelevant; it was clear from both the perfect and imperfect self-defense instructions that the issue is whether Ceja *believed* he was in imminent danger.  As to perfect self-defense, the jury was told, "If the defendant's beliefs were reasonable, the danger does not need to have actually existed."  (CALCRIM No. 505.)  For imperfect self-defense, the jury was told, "A danger is *imminent* if, when the fatal wound occurred, the danger actually existed or the defendant believed it existed."  (CALCRIM No. 571.)  In our view, no further instructions were required.

*Sufficiency of the evidence*

Ceja reframes the issue of the reasonableness of the need for self-defense as a claim that the evidence was insufficient to establish criminal homicide.  We conclude otherwise.

"When a defendant challenges the sufficiency of the evidence, ' "[t]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*People v. Clark* (2011) 52 Cal.4th 856, 942–943.)  "In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts" because these are "the exclusive province of the trier of fact." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

In our view, substantial evidence supports the conviction for voluntary manslaughter.  Ceja went to the encampment after

13

Chase alerted him Peinado was there. He said during the *Perkins* operation he was looking for Peinado, chased him, and hid so he could confront him. The videotape and timing of the shooting support the conclusion that Ceja racked his firearm and pointed it at Peinado before Ceja could have seen any firearm in Peinado's hand. Based on the evidence, the jury could reasonably conclude that Ceja intentionally killed Peinado based on an actual but unreasonable belief that Peinado had already drawn his gun, or, if he knew Peinado had not drawn his gun, Ceja unreasonably believed deadly force was necessary in defense of imminent danger. Because substantial evidence supports the jury's verdict, " ' "the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' " (*People v. Abilez* (2007) 41 Cal.4th 472, 504.)

### *Cumulative errors*

Ceja contends that cumulative errors resulted in an unfair trial. "[W]e have found no error to cumulate." (*People v. Koontz* (2002) 27 Cal.4th 1041, 1094.)

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

YEGAN, Acting P. J.                    CODY, J.

14

Hector M. Guzman, Judge

Superior Court County of Los Angeles

_____

Lynda A. Romero, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and David O. Voet, Deputy Attorneys General, for Plaintiff and Respondent.